# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| MARK CUBAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 09-0996 (RBW) |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |

_____)

## MEMORANDUM OPINION

The plaintiff, Mark Cuban, brings this action against the defendant, the Securities and Exchange Commission (the "SEC"), pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (2006) ("FOIA") and the Privacy Act, 5 U.S.C. § 552a (2006), challenging the adequacy of the defendant's searches for responsive records and seeking to compel the release of several records the defendant has completely withheld from disclosure.  Complaint ("Compl.") ¶ 1.  This matter is currently before the Court on the parties' cross-motions for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 that address their respective positions concerning the reasonableness of the searches the defendant conducted for responsive records and the disclosure of documents made by the defendant to the plaintiff.  See Defendant's Motion for Partial Summary Judgment ("Def's. Mot."); Plaintiff's Memorandum of Law in Opposition to Defendant Securities and Exchange Commission's Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mot.").  The defendant has processed seventeen of the plaintiff's twenty requests and the summary judgment motions pertain to those seventeen requests.  As to the remaining three requests, the defendant seeks thirty-six additional

months in order to complete the processing and these requests.  <u>See</u> Defendant's Motion to Bifurcate and Stay Proceedings ("Def.'s Mot. to Stay").  The plaintiff opposes the defendant's motion for a thirty-six-month extension and seeks immediate production of all responsive records.  <u>See</u> Plaintiff Mark Cuban's Memorandum of Law in Opposition to Defendant Securities and Exchange Commission's Motion to Bifurcate and Stay Proceedings ("Pl.'s Opp'n to Stay").  For the reasons set forth below, the Court must grant in part and deny in part both parties' cross-motions for partial summary judgment and deny without prejudice the motion to bifurcate and stay these proceedings.[1]  Also, for the reasons set forth below, the parties shall appear before the Court at a hearing at which the Court will determine an appropriate timeline by which the defendant must complete processing the plaintiff's remaining three requests.  In addition, if the defendant continues to rely upon Exemption 7(A) as grounds for refusing to produce responsive documents, at that same hearing the defendant shall be prepared to provide representations to the Court regarding the status of the ongoing investigation.[2]

---

[1]       The Court also considered the following submissions in ruling on the motions:  Defendant's Memorandum of Law in Support of Its Motion for Partial Summary Judgment ("Def.'s Mem."); Plaintiff's Memorandum of Law in Opposition to Defendant Securities and Exchange Commission's Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mem."); Defendant's Reply to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment and Response to Plaintiff's Cross Motion for Summary Judgment ("Def.'s Reply"); Plaintiff's Reply to Defendant Securities and Exchange Commission's Response to Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply"); Notice of Filing of Defendant's Statement of Material Facts as to Which There is No Genuine Issue, Pursuant to Local Rule 7(h) in Support of Defendant's Motion for Partial Summary Judgment ("Def.'s Stmt."); Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Pl.'s Stmt."); Plaintiff Mark Cuban's [Proposed] Statement of Genuine Issues in Response to the SEC's Statement of Material Facts and in Opposition to the SEC's Motion for Partial Summary Judgment; Response of the Securities and Exchange Commission to Plaintiff's Statement of Material Facts as to Which There is No Dispute; Memorandum of Points an Authorities in Support of Defendant's Motion to Bifurcate and Stay Proceedings ("Def.'s Mem. re Stay"); Plaintiff Mark Cuban's Memorandum of Law in Opposition to Defendant Securities and Exchange Commission's Motion to Bifurcate and Stay Proceedings; and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Bifurcate and Stay Proceedings.

[2]       If necessary, the Court will obviously permit government counsel to make these representations to the Court <u>ex parte</u>.

# I. BACKGROUND

On December 19, 2008, the plaintiff, through counsel, requested from the defendant the production of twenty categories of records pursuant to the FOIA and the Privacy Act. The plaintiff submitted this request in two letters. Specifically, in the letter pursuant to the FOIA exclusively, the plaintiff sought thirteen categories of records relating to several businesses and individuals, including several requests for records related to potential internal SEC investigations.[3] Def.'s Mem., Ex. 1 (Decl. of Margaret Celia Winter) ("Winter Decl."), Attach. A (Dec. 19, 2008 Letter from David M. Ross to SEC) ("Request Ltr. I") at 1-3. Similarly, in the letter that requested disclosure pursuant to both the FOIA and the Privacy Act, the plaintiff sought seven categories of records related to himself, and various businesses, persons, and potential internal SEC investigations. Id., Ex. 1 (Winter Decl.), Attach. B (Dec. 19, 2008 Letter from David M. Ross to SEC ("Request Ltr. II")) at 1-3. The defendant received both letters on December 23, 2008, and assigned them a single internal tracking number. Id., Ex. 1 (Winter Decl.), Attach. I (June 29, 2009 Letter from Richard M. Humes to David Ross) at 1, n.1.

The defendant initially informed the plaintiff that it possessed no responsive records relating to the first four categories of Request Letter I and the third category of Request Letter II Id., Ex. 1 (Winter Decl.), Attach. C (Jan. 30, 2009 Letter from Mark P. Siford to David Ross) at 1-3. As to categories 7 and 11-13 of Request Letter I, the defendant indicated in its initial January 30, 2009 response that it possessed "no means to conduct a reasonable search for [that] type of information," Id., Ex. 1 (Winter Decl.), Attach. C at 2, and as to category 6 of Request Letter I, the defendant further stated that the only information it had included public records from

---

[3] Although not numbered, the categories of records sought will be referred to in the order in which they were set forth in the request letters.

a judicial proceeding directly available to the plaintiff from the court.  Id.  As to the remainder of the plaintiff's requests, the defendant stated that it was "consulting with other Commission staff regarding information that may be responsive," and it would "advise [the] plaintiff of [its] findings as soon as [it] receive[d] a response" from its staff.  Id., Ex. 1 (Winter Decl.), Attach. C at 3.

A series of letters from the defendant updating the plaintiff as to the progress of its search followed.  On February 5, 2009, the defendant advised the plaintiff by letter that it did not have any responsive records related to category 5 of Request Letter I, and that it was withholding records responsive to categories 1, 2, 4 and 5 of Request Letter II under Exemption 7(A).  Id., Ex. 1 (Winter Decl.), Attach. D (Feb. 5, 2009 Letter from Mark P. Siford to David Ross) at 1-2. On March 5, 2009, the defendant informed the plaintiff that it was relying on the deliberative process protection of Exemption 5 of the FOIA to withhold records responsive to category 3 of Request Letter II.  Id., Ex. 1 (Winter Decl.), Attach. F (Mar. 5, 2009 Letter from Mark Siford to David Ross) at 1-2.  In a March 16, 2010 letter, the defendant stated that it was withholding records responsive related to category 6 of Request Letter I because they fell within the law enforcement classification of Exemption 7(A).  Id., Ex. 1 (Winter Decl.), Attach. G (Mar. 16, 2009 Letter from Mark Siford to David Ross) at 1-2.  On July 2, 2009, the defendant indicated that it was withholding records related to category 9 of Request Letter I under Exemption 6, and records responsive to categories 8 and 10 of Request Letter I and 6-7 of Request Letter II under Exemption 7(A).  Id., Ex. 1 (Winter Decl.), Attach. K (July 2, 2009 Letter from Mark P. Siford to David Ross) at 1.  In a July 9, 2009 letter, the defendant informed the plaintiff that while it once may have had records relating to categories 1-5 of Request Letter I and category 3 of Request Letter II, any responsive records had not been retained.  Id., Ex. 1 (Winter Decl.),

Attach. L (July 9, 2009 Letter from Richard M. Humes to David Ross) at 1; see also id., Ex. 1 (Winter Decl.), Attach. I at 3-4. The defendant also indicated in the July 9, 2009 letter that it was the defendant's position that "internal administrative records used to track staff assignments and inquires are not responsive to th[e] request," but even if they were responsive, the defendant was relying on Exemption 2 to withhold these records, as well as Exemptions 6 and 7(C) to withhold the names of any staff or other names contained within those records. Id. On September 17, 2009, the defendant wrote to the plaintiff, referencing a telephone conversation between the parties in which the plaintiff purportedly agreed to redefine the scope of his category 6 request in Request Letter I. Id., Ex. 1 (Winter Decl.), Attach. M (Sept. 17, 2009 Letter from Juanita C. Hernández to Lyle Roberts) at 1. The defendant indicated that due to the narrowing of the scope of that category, some additional records previously located were now unresponsive, but other records located were, in fact, still responsive and would be processed for release. Id. The defendant also suggested that if the plaintiff was willing to narrow the scope of other requests, specifically category 10 of Request Letter I by subject matter and time frame, that it would reduce the burden on the defendant to search for responsive records, and therefore presumably hasten the final response time. Id. On September 22, 2009, the defendant reported that it may have located responsive records related to one of the entities regarding which the plaintiff sought records and sought the plaintiff's permission to incur processing costs to review and redact the records. Pl.'s Mem., Declaration of David M. Ross in Support of Plaintiff's Opposition to Defendant Security and Exchange Commission's Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Ross Decl."), Ex. 4 (Sept. 22, 2009 Letter from Mark P. Siford to David M. Ross) at 1.[4] Finally, on January 14, 2010, the defendant

---

[4] The plaintiff promptly authorized the defendant to incur the cost of processing and reviewing the records

(continued . . . )

wrote to the plaintiff to state that it was no longer relying upon Exemption 7(A) as grounds for withholding records responsive to category 10 of Request Letter I and category 1 of Request Letter II. Def.'s Mem., Ex. 1 (Winter Decl.), Attach. N (Jan. 14, 2010 Letter from Mark P. Siford to David Ross) at 2. The defendant also stated that, relying on Exemptions 5, 6, and 7(C), it would be producing only redacted records responsive to category 3 of Request Letter II. Id.

The plaintiff also sent a series of communications to the defendant. In addition to negotiating the scope of categories 6 and 10 of Request Letter I, see Def.'s Reply, Ex. 8 (Supplemental Declaration of Margaret Celia Winter) ("Winter Suppl. Decl."), Attach. B (Sept. 21, 2009 Letter from Lyle Roberts to Juanita C. Hernández) at 1; id., Ex. 8 (Winter Suppl. Decl.), Attach. C (Sept. 25, 2009 Letter from Juanita C. Hernández to Lyle Roberts), the plaintiff administratively appealed the adequacy of the defendant's searches with respect to the categories of records for which the defendant stated that it had no responsive records, as well as the defendant's reliance on Exemption 7(A) to withhold records responsive to categories 1, 2, and 4-6 of Request Letter I, Def.'s Mem., Ex. 1 (Winter Decl.), Attach. E (Feb. 17, 2009 Letter from David Ross to the SEC) at 1-2; id., Ex. 1 (Winter Decl.), Attach. H (Mar. 31, 2009 Letter from David Ross to SEC) at 1-3; Exemption 5 to withhold records responsive to categories 3 of Request Letter II, id., Ex. 1 (Winter Decl.), Attach. H (Mar. 31, 2009 Letter from David Ross to SEC) at 1-3; and the overall failure of the defendant to respond to the plaintiff's request for records pursuant to the Privacy Act, id.; see also Pl.'s Mem., Ross Decl., Ex. 1 (Feb. 19, 2009 Letter from Celia L. Jacoby to David M. Ross), Ex. 2 (Apr. 2, 2009 Letter from SEC to David Ross), & Ex. 3 (Apr. 9, 2009 Letter from Celia L. Jacoby to David M. Ross).

_____

( . . . continued)
on September 25, 2009. Pl.'s Mem., Ross Decl., Ex. 5 (Sept. 25, 2009 Letter from David M. Ross to Mark P. Siford).

The defendant granted in part and denied in part the plaintiff's administrative appeals. Def.'s Mem., Ex. 1 (Winter Decl.), Attach. I (June 29, 2009 Letter from Richard M. Humes to David Ross) & Attach. J (June 29, 2009 Letter from Richard M. Humes to David Ross). The administrative appeals were denied in regards to the withholding to the investigative and enforcement records that had been withheld pursuant to the Privacy Act. Id., Ex. 1 (Winter Decl.), Attach. I at 2-3 & Attach. J at 2. However, the defendant granted the plaintiff's appeal with respect to the adequacy of the defendant's search for records, finding that while the initial search was reasonable, it ultimately was determined to be incomplete and therefore additional searches would have to be conducted. [5] Id., Ex. 1 (Winter Decl.), Attach. I at 3-5 & n.7. In addition, the defendant concluded that the initial searches that it had conducted and its reliance on Exemptions 2, 5, 6, 7(A) and 7(C) to withhold records it had located responsive to those searches were adequate and statutorily compliant. [6] Id., Ex. 1 (Winter Decl.), Attach. I at 3-6 & Attach. J at 2-5. The defendant also rejected the plaintiff's position that it needed to produce a Vaughn index as part of the administrative process. Id., Ex. 1 (Winter Decl.), Attach. J at 3.

Meanwhile, as the correspondence between the parties was ongoing, the plaintiff filed this action on May 28, 2009, seeking the immediate production of the records denied to him and maintaining that the defendant's search efforts were inadequate and reliance on the exemptions invoked by the defendant was improper. See generally Compl. The defendant answered the complaint on July 2, 2009, denying the plaintiff's allegations that its search efforts were

---

[5]     It was the July 29, 2009 remand for further searching that prompted the additional potentially responsive records identified by the defendant in its September 22, 2009 letter. See Pl.'s Mem., Ross Decl., Ex. 4; see also Def.'s Mem., Ex. 1 (Winter Decl.), Attach. N.

[6]     Upon appeal, the defendant also concluded that its previous reliance under Exemption 7(A) to withhold records pertaining to one investigatory matter was no longer viable given that the investigation had concluded, but the defendant indicated that it would still review the records to determine if other Exemptions applied. Id., Ex. 1 (Winter Decl.), Attach. J at 3-4

inadequate and maintaining that its reliance on the identified Exemptions was proper.  The filing

of the parties' cross-motions for partial summary judgment and the defendant's motion to

bifurcate and stay this action as it relates to the categories of the request that the defendant has

yet to produce followed.

## II.  STANDARD OF REVIEW

Under Rule 56, summary judgment is appropriate if "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c)(2).  When ruling on a Rule 56 motion, the Court must view the evidence in the light most

favorable to the non-moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)

(citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must

therefore draw "all justifiable inferences" in favor of the non-moving party and accept the non-

moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould,

286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation

marks omitted), because "conclusory allegations unsupported by factual data will not create a

triable issue of fact," Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir.

1999) (internal brackets and quotation marks omitted).  If the Court concludes that "the

nonmoving party has failed to make a sufficient showing on an essential element of [his] case

with respect to which [he] has the burden of proof," then the moving party is entitled to summary

judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**A.      The Defendant's Search Obligations**

An agency that is responding to a FOIA request must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (citation and internal quotation marks omitted); see also Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (stating that "[an] agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents") (internal quotation marks omitted).  While "an agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested," Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998) (internal quotation marks omitted), the search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request," Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986); see also id. at 953 (stating that "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file").

Thus, "[t]here is no requirement that an agency search every record system" in which responsive documents might conceivably be found.  Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Rather, an agency must demonstrate the adequacy of its search by providing a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Id.  "Once the agency has shown that its search was reasonable, the burden shifts to [the plaintiff] to rebut [the defendant's] evidence . . . either by contradicting the defendant's account of the search procedure or by raising evidence of the defendant's bad faith." Moore v. Aspin, 916 F. Supp. 32, 35-36 (D.D.C. 1996) (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383-

84 (8th Cir. 1985)).  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

**B.      The Defendant's Record Production Obligations**

The FOIA requires a federal agency to release all records responsive to a request for production, 5 U.S.C. § 552(a)(3)(A), unless such records falls within one of the well-defined exemption categories listed in § 552(b).  The Court is authorized under the FOIA "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant."  § 552(a)(4)(B); see also Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139 (1980).  When a FOIA requester files a civil action, the agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."  Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980) (internal citation and quotation marks omitted); accord Maydak v. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000) (holding that government has the burden of proving each claimed FOIA exemption).  The Court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations when they sufficiently describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

### III.  LEGAL ANALYSIS

**A.       Adequacy of the Defendant's Searches for Responsive Records**

Initially in its motion, the defendant took the position that the plaintiff had failed to appeal the defendant's responses as to categories 7, 11, 12, and 13 of Request Letter I, and thus by not exhausting the administrative remedies available to him, the plaintiff could not now litigate the defendant's responses regarding those categories.  Def.'s Mem. at 6-7.  The plaintiff responded that because the defendant never informed him of his right to appeal those categories, his administrative remedies were constructively exhausted.  Pl.'s Mem. at 7-9.  Regardless of these positions, it appears that before the briefing on the parties' cross-motions was complete, the defendant did, in fact, represent that it conducted a search for records responsive to categories 11, 12, and 13 of Request Letter I, and no responsive records were found.  Def.'s Reply at 4-5; id., Ex. 13 (Supplemental Declaration of Noelle L. Frangipane) ("Frangipane Suppl. Decl.") ¶¶ 3-5.  As to category 7, which seeks information regarding trades in Copernic securities by any SEC personnel, the defendant maintains that based on the manner in which it maintains its files, a search for responsive records would be overly burdensome and unreasonable because it would involve reviewing each file manually.  Def.'s Reply at 4-5; id., Ex. 14 (Declaration of William Lenox) ("Lenox Decl.") ¶ 5.

While the Court does not condone the defendant's delay in conducting these searches, as timely searches might have limited or avoided altogether litigation of the adequacy of these searches, the Court will not focus on whether those searches were untimely now that they have

been conducted, but will assess whether they satisfy the defendant's search obligations.[7] The defendant's declarations do not convince the Court that it has.

The defendant was obligated to demonstrate the adequacy of its search by providing a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Oglesby, 920 F.2d at 68. Instead, the supplemental declaration of Noelle L. Frangipane, who conducted the search of the Office of the Inspector General ("OIG"), merely states that the declarant "conducted a search" by reviewing "indices of investigations" based on familiarity with internal SEC investigations and "determined that the OIG possessed no documents responsive to these requests."[8] Def.'s Reply, Ex. 13 (Frangipane Suppl. Decl.) ¶¶ 4-5. This declaration is woefully lacking of the detail necessary for the Court to assess the adequacy of the search; it merely concludes that a search was conducted and it was adequate. While the Court must presume the good faith of the declarant, the Court need not defer to the declarant on the ultimate question of the adequacy of the search.

---

[7]     Given that the SEC's correspondence with the plaintiff are arguably vague as to whether the plaintiff was appraised that he had the right to appeal – the plaintiff was advised that he had "the right to appeal the adequacy of [the] search or finding of no responsive information" but not specifically that he could appeal the defendant's determination that it "[had] no means to conduct a reasonable search for [records referenced in categories 7, 11, 12, and 13 of Request Letter I]," Def.'s Mem., Winter Decl., Attach. C at 2—and also given that the defendant subsequently responded to those production requests, albeit in the highly disfavored manner of responding in its reply brief, the Court may, under these circumstances, nonetheless decide the merits of the plaintiff's FOIA claims even though he did not appeal the defendant's initial failure to search for the records. Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004) (indicating that exhaustion is a "prudential consideration," not "a jurisdictional prerequisite," and it may be excused where the case "presents no risk of undermining the purposes and policies underlying the exhaustion requirement, namely, to prevent premature interference with agency processes, to give the parties and the courts benefit of the agency's experience and expertise and to compile an adequate record for review").

[8]     Explaining why the search was limited to "whether the OIG had any documents responsive to Request Nos. 1-7, 9, 11, 12, and 13" of Request Letter II, the declarant also indicates that she was not "aware of any other source within the OIG that is likely to contain any additional information or documents responsive to these requests." Def.'s Reply, Ex. 13 (Frangipane Suppl. Decl.) ¶¶ 4-5.

Nor does the declaration of William Lenox fare any better. This declarant states that based on his familiarity with the SEC's recordkeeping as to the security trading of its employees, which "are not organized or categorized by security," "searching for records potentially responsive to this request would entail performing a page-by-page review of thousands of documents submitted by over 3,800 Commission employees to ascertain which, if any, of these records related to Copernic securities." Def.'s Reply, Ex. 14 (Lenox Decl.) ¶ 5. The declarant states that "it is not possible to perform an electronic search of these records for specific securities," id., and further that it is the SEC's "policy to keep employees' reports of security transactions confidential as they contain information in which employees have a privacy interest, id. ¶ 6. This declaration too is not sufficient as it does not indicate with specificity how the employee files are maintained, how they could be searched, and why an electronic search of the files is not even feasible. The Court does not dispute that searches "impos[ing] an unreasonable burden on [an] agency" need not be compelled, Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 (D.C. Cir. 1995), but it cannot conclude that the plaintiff's search request would pose such an unreasonable burden based on the sparse representations that the defendant has provided.[9] The defendant does not actually indicate how its files regarding securities trading by SEC personnel are maintained, indicating simply that the records "are not organized or categories by security, and cannot be searched electronically for specific securities." Def.'s Reply at 4. It must be remembered that an agency's obligation is to make a good faith search using methods reasonably anticipated to produce responsive information, Oglesby, 920 F.2d at

---

[9]     Moreover, while the Court finds the defendant's explanation concerning the adequacy of this search insufficient and therefore need not reach the question of whether the SEC's employees' privacy interest in their securities trades trumps the plaintiff's right to disclosure of this information, it does seem odd for the defendant to claim that its employees have a privacy interest in their securities ownership when the SEC publishes the names of certain shareholders of public companies through its Electronic Data Gathering, Analysis, and Retrieval System (commonly referred to as "EDGAR"). But that explanation will be left for a later date.

68, even though an agency need not establish that it has searched far and wide to produce "all responsive documents," <u>Nation Magazine</u>, 71 F.3d at 892 n.7 (emphasis in original). Here, the defendant's declarations leave the Court uncertain as to whether another manner of searching for these records could produce the records that the plaintiff seeks. Presumably, as the plaintiff states, Pl.'s Reply at 7, the records have to be searchable in some manner to allow the defendant to utilize them for their own recordkeeping purpose to ensure that abuse and conflicts of interest do not occur. And based on these declarations, the Court is unable to conclude that the defendant made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." <u>Baker & Hostetler</u>, 473 F.3d at 318 (citation and internal quotation marks omitted). Indeed, whether there are any reasonable search methods the defendant could employ is a complete mystery, as is the manner in which it files can, in fact, be searched. The Court therefore agrees with the plaintiff that the defendant's post-litigation declarations are too conclusory and lack the requisite detail to merit awarding summary judgment to the defendant, and therefore summary judgment must be awarded to the plaintiff as to the adequacy of the defendant's search for records responsive to categories 7, 11, 12, and 13 of Request Letter I. Whether or not the defendant determines that it must re-conduct its search to alleviate the identified inadequacies, the defendant must provide more detail-specific declarations in order for the Court to reassess the adequacy of the defendant's search efforts.

**B.      The Exemptions Relied Upon by the Defendant for Its Non-Production of Responsive Documents**

As indicated, because the FOIA presumes that responsive records are to be disclosed, a government agency relying on a statutory exemption to withhold certain records or portions of

records from a requester bears the burden of establishing that its reliance on those exemptions is warranted.  <u>Goland</u>, 607 F.2d at 352 (internal citation and quotation marks omitted); <u>accord</u> <u>Maydak</u>, 218 F.3d at 764.  This burden is very important because the question for the Court becomes whether the defendant has justified its withholding of records pursuant to the cited exemptions, not whether the plaintiff is entitled to the records or whether the plaintiff can cite a good reason for access to them.  Here, the defendant relies upon Exemptions 2, 5, 6, 7(A) and 7(C) to withhold 80 documents withheld in their entity.  Def.'s Reply, Ex. 9.  Each exemption will be addressed in turn, with an indication of the records in the defendant's <u>Vaughn</u> index to which the exemptions were invoked.

      **1.     Exemption 2**

Exemption 2 of the FOIA shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  It applies if the information in question meets two criteria: First, such information must be "used for predominantly internal purposes," <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670 F.2d 1051, 1073 (D.C. Cir. 1981); <u>see also</u> <u>Nat'l Treasury Emps. Union v. U .S. Customs Serv.</u>, 802 F.2d 525, 528 (D.C. Cir. 1986); and second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest," <u>Schwaner v. Dep't of the Air Force</u>, 898 F.2d 793, 794 (D.C. Cir. 1990) (citations and internal quotation marks omitted).  "Predominantly internal documents that deal with trivial administrative matters fall under [what is referred to as] the 'low 2' exemption."  <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992); <u>see also</u> <u>Founding Church of Scientology, Inc. v. Smith</u>, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983) (finding low 2 exemption automatically covers trivial administrative matters of no genuine

public interest).  The defendant here is relying upon the low 2 exemption to withhold what it characterizes as administrative matters.  <u>See</u> Def.'s Mem. at 9; Def.'s Reply at 5.

The defendant maintains that it can withhold records 78-80 under Exemption 2 because these records "concern internal SEC administrative matters that are not of any genuine public interest and contain names of staff members involved in [SEC] investigations, and their phone numbers and e[-]mail addresses."  Def.'s Mem., Ex. 3 (Declaration of Kenneth H. Hall) ("Hall Decl.") ¶ 6; <u>see also</u> Def.'s Reply, Ex. 9.  One of the defendant's declarants, the Assistant Chief Counsel in the Division of Enforcement in the Office of the Chief Counsel at the SEC, represents that these documents "are internal records of closed [matters under inquiry] pertaining to 'Shareslueuth.com,'" one of the entities regarding which the plaintiff sought records, and are "primarily internal tracking records" comprised of "nineteen pages, including three file covers, four pages of internal data entry forms, five pages of . . . summaries and seven pages of e[-]mails."  Def.'s Mem., Ex. 3 (Hall Decl.) ¶¶ 6-7.  According to the declarant, the summaries consist of purely "internal reports used by Enforcement supervisory staff to administer and manage cases," <u>id.</u> ¶ 8, the data entry forms "are also internal reports used by Enforcement supervisory staff to manage and administer investigations," <u>id.</u> ¶ 9, and the e-mails include "automated messages that show that a request was made to open or close a matter that has been submitted into Enforcement's case management system," including "the name of [the] SEC staff who submitted data and show[ing] that a request for action has been submitted and provid[ing] the name given to the matter," <u>id.</u> ¶ 11.  According to the declarant, the collection of e-mails being withheld also contains one e-mail from a complainant that can be disclosed with redactions, and several "internal e[-]mails primarily concern[ing] administrative routine matters about the logistics of opening [an investigative matter]."  <u>Id.</u> ¶¶ 12-13.

The plaintiff contends that the defendant's reliance on Exemption 2 is improper because documents 78-80 "pertain[] to informal SEC investigations," i.e. "the core function of the agency," and therefore the documents "cannot be [considered] 'routine housekeeping matters' in which the public would presumably lack interest."  Pl.'s Mem. at 14.  The plaintiff maintains that the type of information in the documents "is a matter of genuine public interest because it sheds light on how the SEC conducts its activities or carries out its statutory responsibilities."  Pl.'s Reply at 9-10.

While it appears that records may be "used for predominantly internal purposes," Crooker, 670 F.2d at 1073, and the staff names and contact information may fall within Exemptions 2, 6, and 7(C) and thus are shielded from disclosure, the defendant has not shown that "the material relates to trivial administrative matters of no genuine public interest," Schwaner v. Dep't of the Air Force, 898 F.2d 793, 794 (D.C. Cir. 1990) (citations and internal quotation marks omitted).  "[T]he general thrust of . . . exemption [2] is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest."  Dep't of the Air Force v. Rose, 425 U.S. 352, 369-70 (1976).  It is axiomatic that matters that the SEC determines worthy of investigation are not trivial, especially when it is the function of the defendant to ferret out fraud. And indeed, even trivial information may not be withheld from disclosure "simply because it manifests an agency practice of collecting the information."  Schwaner, 898 F.2d at 779 (emphasis in original).  Moreover, the defendant has expressed a willingness to produce a redacted version of an e-mail complaint (redacting the identifying information of the complainant of course), and has provided redacted versions of similar records in response to other FOIA requesters, see, e.g., Gavin v. SEC, Civ. No. 04-4522 (PAM/JSM), 2007 WL

17

2454156 at *6 (D. Minn. Aug. 23, 2007) (upholding administrative management related redactions under Exemption 2, but denying reliance on Exemption 2 where full withholding made it impossible to "discern whether the documents contain purely trivial, administrative information"), so its position seems untenable here. Why redacted versions cannot also be disclosed in this case is simply not clear on the basis of the defendant's representations. See Stolt-Nielsen Transp. Grp., Ltd. v. United States, 534 F.3d 728, 734 (D.C. Cir. 2008) ("'[a]ny reasonably segregable portion of a record shall be provided to a person requesting such record after deletion of the portions which are exempt'" (alteration in original, citation omitted and emphasis added)). Accordingly, the records encompassed by the defendant's Exemption 2 claim must be redacted and produced with the following caveat.

It is unclear based on the declarant's representation whether the several "internal e[-]mails primarily concern[ing] . . . the logistics of opening [an investigative matter]" might reveal the defendant's internal rules and practices. Def.'s Mem., Ex. 3 (Hall Decl.) ¶¶ 12-13. To the extent that the information contained within the records concerns internal rules and practices, that information may be redacted, but to the extent that the tracking records include such items as dates, requests to open and close these investigations, stock type, and case status, such information is not necessarily trivial for purposes of Exemption 2 simply because it is factually based and is a necessary part of carrying out the investigation. See Schwaner, 898 F.2d at 779. Because the exemptions are information-specific and not record-type based, the defendant must provide some rationale for distinguishing the information contained within the records – not simply referencing the records as a whole – that truly reveals the defendant's internal rules and practices and not just factually based information inherently collected during an investigation. See Rose, 425 U.S. at 370 (finding that case summaries of ethics hearings are not protected by

18

Exemption 2 because they have more than internal significance, "do not concern <u>only</u> routine matters," and "[t]heir disclosure entails no particular administrative burden" (emphasis added)). Therefore, for purposes of these cross-motions for summary judgment, because the defendant has not made the requisite showing, at this junction it is the Court's finding that these records cannot be withheld in their entirety pursuant to Exemption 2, and, at minimum, redacted versions must be produced pursuant to 5 U.S.C. § 552(b).

### 2.      Exemption 5

Exemption 5 of the FOIA provides that the "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure under the FOIA.  5 U.S.C. § 552(b)(5).  "To qualify [for non-disclosure under Exemption 5], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  <u>U.S. Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001).  The threshold issue that must therefore be addressed when Exemption 5 is asserted is whether the records in question qualify as "inter-agency or intra-agency memorand[a]."  <u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 90 F. Supp. 2d 9, 13 (D.D.C. 2000).

"With respect to the secondary consideration under Exemption 5 – whether such materials would not be 'available by law in litigation with the agency,'" <u>id.</u> – "the parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery . . . [,]" <u>Burka v. U.S. Dep't of Health & Human Servs.</u>, 87 F.3d 508, 516 (D.C. Cir. 1996).  Thus, if a document requested pursuant to the FOIA would normally be subject to disclosure in the civil discovery context, it must also be disclosed under the FOIA.  <u>Id.</u>

Conversely, information that is routinely not subject to disclosure in the civil discovery process is exempt from disclosure under Exemption 5. Id. Accordingly, "to justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context." Id. at 517. Thus, courts have incorporated three traditional civil discovery privileges into Exemption 5: (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1975); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862, 866 (D.C. Cir. 1980).

The defendant relies on all three aspects of Exemption 5 to withhold almost all of the 80 records on its Vaughn index, see Def.'s Mem. at 10, so the Court must evaluate each assertion of privilege in turn.

### a. Deliberative Process Privilege

The deliberative process privilege may be relied upon by an agency if the information sought to be withheld from disclosure contains predecisional information that was part of the deliberative process, i.e., that there was a "'deliberative process . . . involved, and the role played by the documents at issue [was] in the course of that process,'" Heggestad v. Dep't of Justice, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting Coastal States, 617 F.2d at 868), and the records contain "'recommendations or expresse[d] opinions on legal or policy matters,'" id. (quoting Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975)). "To qualify under Exemption 5, a document must also be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. A document that does nothing more than explain an existing policy cannot be considered deliberative." Pub. Citizen, Inc. v. Office of Mgmt. &

Budget, 598 F.3d 865, 876 (D.C. Cir. 2010) (citation and internal quotation marks omitted).

Further, an agency may not rely on Exemption 5 to withhold records containing

> existing policy . . . simply by describing the policy in a document
> that as a whole is predecisional, such as a memo written in
> contemplation of a change in that very policy. Only those portions
> of a predecisional document that reflect the give and take of the
> deliberative process may be withheld.

Id. (citations omitted). Similarly, "portions of predecisional and deliberative documents that

contain factual information that does not 'inevitably reveal the government's deliberations'" must

be produced under the FOIA. Id. (citations omitted).

The defendant asserts that records 1-3, 9, 11, 13-15, 17, 19, 21-22, 25-29, 32-35, 37-46,

48-57, 59-64, 69, 71, and 73-76 may be withheld pursuant to the deliberative process protection

of Exemption 5. Def.'s Mem. at 16. The defendant represents that the records withheld consist

of "internal e[-]mails and handwritten notes regarding an internal investigation on a personnel

matter," and the records "reflect deliberations regarding the proposed discipline of an employee

including whether the employee engaged in misconduct, what discipline is appropriate for any

misconduct, and what procedures should be followed in imposing discipline." Id.; see also Def.'s

Reply at 8; id., Ex. 10 (Supplemental Declaration of David M. Pinansky) ("Pinansky Suppl.

Decl.") ¶ 6. A declarant for the defendant, a Senior Special Counsel in the Office of the General

Counsel of the Securities and Exchange Commission, represents without elaboration that all of

the records withheld pursuant to the deliberative process privilege related a "personnel matter"

and "reflect internal agency deliberations regarding the proposed discipline of an employee."

Def.'s Reply, Ex. 10 (Pinansky Suppl. Decl.) ¶ 6. The defendant contends that the disclosure of

this information will have a "chilling effect on future predecisional discussion and debate that

would harm the SEC's deliberative process." Def.'s Mem. at 16; see also Def.'s Reply, Ex. 10 (Pinansky Suppl. Decl.) ¶ 7.

The plaintiff contends that through its representations the defendant has not met its burden to withhold documents as deliberative process records under Exemption 5 because "[t]he SEC's Vaughn Index and declarations are insufficient to determine whether any of the documents withheld actually qualify for protection as deliberate process materials." Pl.'s Mem. at 21; see also Pl.'s Reply at 17. According to the plaintiff, the defendant's assertions "lack sufficient detail and contain only conclusory statements regarding alleged 'pre-decisional deliberations,'" failing to identify any specifics that would allow the Court and the plaintiff to assess the propriety of the defendant's claims. Pl.'s Mem. at 21-22. Moreover, the plaintiff contends that the deliberative process privilege cannot be invoked "to cover a routine personnel matter." Pl.'s Reply at 17.

The Court agrees with the premise upon which the defendant's position is based: that its officers must be allowed to make discretionary judgments and consider policy choices in an environment protected from public scrutiny and unnecessary disclosures or it "would tend to 'discourage candid discussion within an agency.'" Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991)). However, the defendant has not made the necessary showing to justify that its withholdings are within the protective realm in which deliberative discussions get safe haven. Again, the defendant's declaration completely lacks any detail regarding any particular record and does nothing more than generally state that Exemption 5 is satisfied. The Court must be able to conclude that the defendant's position is the correct one to sustain the defendant's withholding of these records, and summary judgment in the defendant's favor cannot be obtained on the defendant's bare contention that it has satisfied the legal standard.

In making a determination of whether a record is properly withheld under Exemption 5, "courts frequently examine whether 'the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest communication within the agency.'" Wilderness Soc. v. U.S. Dep't of the Interior, 344 F. Supp. 2d 1, 15 (D.D.C. 2004) (quoting Coastal States, 617 F.2d at 866). "However, in cases where there is no identifying information that would link an individual to a document, this potential is unlikely." Id. The defendant bears the burden of demonstrating, with respect to each its records, that it was candid or personal in nature, that individuals can be linked to the record, and that the information discussed in the record does more than just describe existing policy. The Court cannot discern in any regard whether records 1-3, 9, 11, 13-15, 17, 19, 21-22, 25-29, 32-35, 37-46, 48-57, 59-64, 69, 71, and 73-76 contain such candid and personal communications.

In addition, it is not disputed that the categories of records that might qualify as predecisional and deliberative is great. See Klamath Water Users Protective Ass'n, 532 U.S. at 8 ("deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" (citation and internal quotation marks omitted)). But just because numerous forms of records can qualify does not mean they do qualify in their entirety. Even if these records indexed by the defendant contain such deliberations, which the defendant has not established merely by its own conclusion, the Court cannot discern from the defendant's representations how these records could be completely withheld under Exemption 5. Indeed, "agencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not 'inevitably reveal the government's deliberations.'" Pub. Citizen, 598 F.3d at 876 (quoting In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997)). And the defendant has not met

this burden because neither the defendant's declarations nor its descriptions in the <u>Vaughn</u> index state specifically why the wholesale redaction of these records is warranted. Without a more detailed description upon which the Court can rely, it can only conclude that any candid communications (if, in fact, any are within these records) can be selectively redacted in a manner that protects the confidentiality of the recommendations and individuals involved, but still allows any factual information to be produced. Because Exemption 5 is one of the exemptions that "covers only those <u>portions</u> of the documents that are both predecisional and deliberative," <u>id.</u> at 876 (emphasis added), the defendant, based on the information currently before the Court, must redact and disclose these records in the manner indicated above.

> **b.      Attorney-Client Privilege**

In the context of Exemption 5, "the [attorney-client] privilege . . . functions to protect communications between government attorneys and client agencies or departments, as evidenced by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the private sector." <u>In re Lindsey</u>, 158 F.3d 1263, 1269 (D.C. Cir. 1998). "Thus, when the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors, [Exemption 5] applies." <u>Id.</u> (quoting <u>Coastal States</u>, 617 F.2d at 863). Accordingly, "[t]o invoke the [attorney-client] privilege, an agency must demonstrate that the document it seeks to withhold (1) involves 'confidential communications between an attorney and his [or her] client' and (2) relates to 'a legal matter for which the client has sought professional advice.'" <u>Judicial Watch, Inc. v. U.S. Postal Serv.</u>, 297 F. Supp. 2d 252, 267 (D.D.C. 2004) (quoting <u>Mead Data Cent., Inc. v. Dep't of the Air Force</u>, 566 F.2d 242, 252 (D.C. Cir. 1977)). However, the attorney-client privilege does not give the

agency the ability "to withhold a document <u>merely</u> because it is a communication between the agency and its lawyers." <u>Id.</u> (emphasis added) (citation omitted). The agency must show that the information provided to its lawyers was intended to be confidential and was not disclosed to a third party. <u>Id.</u> (citation omitted).

The defendant asserts that records 11, 13, 21, 25-26, 29, 32, 34-35, 37, 39, 41-44, 53, 55, 57, 59, and 61-63 may be withheld pursuant to the protection of attorney-client privilege under Exemption 5. Def.'s Mem. at 12. The defendant's declarant, again a Senior Special Counsel in the Office of the General Counsel, states that these records include "internal e[-]mail and other internal communications and meetings among OGC attorneys and either one or more [Office of Human Resources] staff members or SEC supervisors regarding [a] personnel matter," and "include legal advice and recommendations." <u>Id.</u>, Ex. 4 (Declaration of David M. Pinansky) ("Pinansky Decl.") ¶ 8. Specifically, the defendant maintains that the

> documents are either (1) attorney communications containing legal advice, primarily e[-]mails or memoranda, with [Human Resources] staff and/or SEC managers regarding the handling of an internal personnel matter, or (2) e[-]mails and handwritten notes reflecting those communications. To the extent a document is not to or from an attorney, it is a document that describes a communication with an attorney on that matter.

<u>Id.</u>, Ex. 10 (Pinansky Suppl. Decl.) ¶ 4. The defendant also submitted two additional declarations, one from the Senior Special Counsel just referenced and the second from a non-attorney Employee and Labor Relations Specialist in the Office of Human Resources, wherein they represent that they "have no information that would lead [them] to believe that the documents withheld under Exemption 5 have been released outside of the Commission." <u>Id.</u>, Ex. 10 (Pinansky Suppl. Decl.) ¶ 3; <u>id.</u>, Ex. 11 (Supplemental Declaration of Nancy Ellen Tyler) ("Tyler Suppl. Decl.") ¶ 4.

In its opposition filing, the plaintiff maintain that the defendant's representations do not satisfy its burden of establishing that the records may be withheld pursuant to Exemption 5 because the defendant has failed to establish that the communications were confidential when created and have since retained their confidential status. Pl.'s Mem. at 16. Nor, the plaintiff maintains, has the defendant relied on anything more than "[n]aked assertions that documents are covered by the [attorney-client] privilege." Id. The plaintiff points out that "e[-]mails sent to an [Office of Human Resources] attorney are not privileged unless they convey confidential information for the purpose of obtaining legal advice," and therefore the defendant's assertion that the records are e-mail communications and thus shielded from disclosure is not determinative. Id. at 17; see also Pl.'s Reply at 14. Finally, the plaintiff points out that no single declarant can represent that the communications have not been disseminated outside of the agency because a declarant cannot speak for everyone at the agency and therefore cannot possibly know if such an assertion is true. Pl.'s Reply at 13.

The Court agrees with the plaintiff that the declarations submitted are too conclusory for the Court to render summary judgment for the defendant on the basis of the attorney-client privilege. "A blanket assertion of the privilege will not suffice." In re Lindsey, 148 F.3d 1100, 1106 (D.C. Cir. 1998). "Like all privileges . . . the attorney-client privilege is narrowly construed and is limited to those situations in which its purposes will be served." Coastal States, 617 F.2d at 862. Simply, the defendant cannot meet its burden without "'prov[ing] that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" Founding Church of Scientology v. NSA, 610 F.2d 824, 836 (D.C. Cir. 1979) (emphasis added) (citation omitted); see also Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) ("We have

simultaneously cautioned that 'conclusory assertions of privilege will not suffice to carry' the agency's burden.") (citation omitted).  The attorney-client privilege is not applicable just because the defendant states that it applies, and a review of the defendant's declaration reveals that the defendant offers nothing more than conclusory assertions and blanket affirmations.  <u>See</u> Def.'s Mem., Ex. 4 (Pinansky Decl.) ¶ 8; <u>see also</u> Def.'s Reply, Ex. 10 (Pinansky Suppl. Decl.) ¶¶ 3-4; <u>id.</u>, Ex. 11 (Tyler Suppl. Decl.) ¶¶ 3-4.  Simply, the defendant must provide more information from which the Court can assess whether the attorney-client privilege was properly asserted.

In other words, "[t]he burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure," not just within the agency, but also among any other individuals outside the agency who needed access to the information.  <u>Coastal States</u>, 617 F.2d at 863.  The declarants' assertions that they lack any reason to believe that the records were "released <u>outside of the Commission</u>," Def.'s Reply, Ex. 10 (Pinansky Suppl. Decl.) ¶ 3 (emphasis added); <u>see also id.</u>, Ex. 11 (Tyler Suppl. Decl.) ¶ 4, do not address the issue of whether those communications were "circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'" <u>Coastal States</u>, 617 F.2d at 863 (citation omitted); <u>see</u> <u>Mead Data Cent.</u>, 566 F.2d at n.24 ("Where the client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication.").  To the extent that any information, including factual information contained within the records, was relayed to anyone outside the sphere of those who needed to know the information within the organization, that information cannot be withheld, and the records must

be produced completely or in a redacted form if another exemption justifies the withholding. <u>See Mead Data Cent.</u>, 566 F.2d at 254-55 (stating that where "the background facts provided [in the records] could easily be information which is not restricted to the [agency] personnel directly responsible for the negotiations . . . [that information was] therefore not confidential for purposes of th[e attorney-client] privilege"); <u>see also Coastal States</u>, 617 F.2d at 863 ("If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential."). Accordingly, the defendant must provide more proof that the privilege applies if it desires to shield these records from production based on an assertion of the attorney-client privilege.

### c.     Attorney Work Product

"The work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" <u>Judicial Watch, Inc. v. Dep't of Justice</u> ("<u>Judicial Watch I</u>"), 432 F.3d 366, 369 (D.C. Cir. 2005) (citation omitted). "The work product doctrine protects such deliberative materials but it also protects factual materials prepared in anticipation of litigation." <u>Tax Analysts v. IRS</u>, 117 F.3d 607, 620 (D.C. Cir. 1997). This means that "'[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5.'" <u>Judicial Watch I</u>, 432 F.3d at 371 (alterations in original) (quoting <u>Tax Analysts</u>, 117 F.3d at 620). Therefore, unlike the attorney-client privilege, "factual material is itself privileged when it appears within documents that are attorney work product," and if a record may be withheld under the attorney work-product protection of Exemption 5, "then segregability is not required." <u>Id.</u> Moreover, "Exemption 5, attorney work-product is

exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." FTC v. Grolier Inc., 462 U.S. 19, 28 (1983).  However, if the records were prepared by attorneys "in the ordinary course of business or for other nonlitigation purposes," the agency cannot rely upon the work product privilege under Exemption 5.  In re Sealed Case, 146 F.3d 881, 887 (D.C. Cir. 1998) ("Of course, not all work undertaken by lawyers finds protection in the work-product privilege.").

The defendant asserts that records 10-11, 13-15, 18-29, 31-46, 48-64, and 77 may be withheld pursuant to the attorney work-product privilege conferred by Exemption 5.  Def.'s Mem. at 14.  The declarant for the defendant on this subject, a Senior Special Counsel in the Office of the General Counsel, states that "all of these documents for which the SEC asserts Freedom of Information (FOIA) Exemption 5 concern internal Commission legal and personnel matters, and I believe are privileged as attorney work product . . . . [because the documents] were prepared in anticipation of litigation by or at the direction of an attorney."  Def.'s Mem., Ex. 2 (Pinansky Decl.) ¶¶ 3, 10; see also Def.'s Reply, Ex. 10 (Pinansky Suppl. Decl.) ¶ 5 (indicating that "[s]ome of the[] documents also include legal analysis and strategy").  The declarant also states: "Because serious discipline of this employee was a possibility at all times we were addressing the personnel problem, we recognized from the beginning of the process that litigation was possible and that we needed to prepare for that situation."  Def.'s Mem., Ex. 2 (Pinansky Decl.) ¶ 10.  The declarant further states that he, as an attorney, "addressed litigation issues with all of the [Office of Human Resources] staff and supervisors involved in that matter, and to address issues [he] raised, they raised issues, gathered information and prepared memoranda in light of these issues."  Id.

The plaintiff counters that the defendant's assertion of the attorney work-product privilege lacks the necessary details to support it.  Pl.'s Mem. at 16.  The plaintiff asserts that it "defies logic and belief" that "every record withheld regarding this [personnel] matter was prepared by or at the direction of an attorney in anticipation of litigation."  Id.  And the defendant opines that because the defendant "has identified no litigation between it and the employee who was the subject of the disciplinary matter," the records "appear to have been created for some other purpose than to assist in reasonably foreseeable litigation."  Id. at 17.  The plaintiff notes that the defendant's Vaughn index "entries make no reference to being prepared by or at the direction of an attorney or that they were prepared in anticipation of litigation . . . . [and posit] they therefore do not reflect the mental impressions of an attorney prepared in anticipation of litigation."  Pl.'s Reply at 18.

While the "[work-product] doctrine should be interpreted broadly and held largely inviolate," and often there is no necessity to segregate information within work-product records, Judicial Watch I, 432 F.3d at 369, 371 (indicating that "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5" (citation omitted)), the Court again cannot award summary judgment to the defendant based on its current representations.   The defendant's representations are simply too cursory for the Court to ensure that it is making an accurate assessment and not just giving the defendant more deference, beyond the good faith deference that it is due, in making withholding determinations under Exemption 5.  The defendant must submit additional evidence that establishes that all of the communications were created with litigation in mind.  The plaintiff's position that all personnel actions do not automatically trigger the attorney work-product privilege is correct, but this reality

30

does not compel the defendant to demonstrate that litigation actually resulted from this personnel dispute. See In re Sealed Case, 146 F.3d at 887 ("[W]here . . . lawyers claim they advised clients regarding the risks of potential litigation, the absence of a specific claim [that the client potentially faced litigation] represents just one factor that courts should consider in determining whether the work-product privilege applies."). "For a document to meet this standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." Id. at 884. There are any number of tasks that an attorney could undertake on behalf of or communications that an attorney could have with the human-resources component of an agency – likely even in the contents of an employee's termination – that never trigger the attorney work-product protection because litigation was not objectively reasonable. And the converse is equally true. These determinations cannot be assessed on the existing record, and the defendant must supply greater detail to satisfy its burden to receive the protection of the attorney work-product privilege.

### 3. Exemption 6

Exemption 6 of the FOIA permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" has been "broadly defined to include any 'Government records on an individual which can be identified as applying to that individual.'" Judicial Watch of Fla. v. U.S. Dep't of Justice ("Judicial Watch II"), 102 F. Supp. 2d 6, 16 (D.D.C. 2000) (citing U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 601-02 (1982)). As construed by the District of Columbia Circuit: "Exemption 6 permits the withholding of information only when two requirements have been met: first, the information must be contained in personnel, medical, or 'similar' files, and second, the information must be of

such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy." Wash. Post, 456 U.S. at 598. This "exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." Id. at 602 (alteration in original) (citation omitted). However, Exemption 6 should only be employed when the privacy interest at stake outweighs the public interest in disclosure. Therefore, the Court must "balance the 'individual's right of privacy' against the basic policy of opening 'agency action to the light of public scrutiny," U.S. Dep't of State v. Ray, 502 U.S. 164, 175 (1991) (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976)), always "tilt[ing] the balance (of disclosure interests against privacy interests) in favor of disclosure," Wash. Post Co. v. U.S. Dep't of Health & Human Servs., 690 F.2d 252, 261 (1982) (citation omitted). However, "[t]he weight of the public's interest in disclosure depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law." Judicial Watch II, 102 F. Supp. 2d at 17 (citing Reed v. NLRB, 927 F.2d 1249, 1252 (D.C. Cir. 1991)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." Beck v. Dep't of Justice, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (citation omitted).

Just as it did with Exemption 5, the defendant relies on Exemption 6 to withhold almost all of the 80 records included in the Vaughn index. Specifically, the defendant states that Exemption 6 justifies its withholding of records 1-22, 25-57, and 59-80, see Def.'s Reply, Ex. 9, because all but the excluded records "relate to an internal investigation of an employee and address issues related to the potential discipline of the employee," Def.'s Mem. at 18, and "contain names, phone numbers, and e[-]mail addresses of individuals" who "have at least some

privacy interest in not making public their involvement in an SEC investigation," Def.'s Mem. at 19-20; id., Ex. 3 (Hall Decl.) ¶ 6.  One of the defendant's declarants, again the Senior Special Counsel in the Office of the General Counsel, states that the records pertain to "personnel matters and address issues in which one or more SEC employees would have a privacy interest," and "[i]nformation pertaining to internal personnel matters is very sensitive; especially to the extent it concerns possible misconduct and potential discipline for that misconduct."  Id., Ex. 4 (Pinansky Decl.) ¶¶ 3, 5.  Another declarant, an Employee and Labor Relations Specialist, adds that the information in records 1-77 relates to a "personnel situation [that] involved numerous internal discussions, meetings and communications with SEC supervisors [and others within the SEC]."  Id., Ex. 5 (Declaration of Nancy Ellen Tyler) ("Tyler Decl.") ¶ 4.  The defendant also maintains that the employee's identity will not be protected by mere redactions of the employee's name and personally identifiable information "because other information in the documents, along with information that is publicly available, could be used to identify the employee" and thus the individual's privacy interests would be harmed.  Id., at 18; see id., Ex. 5 (Tyler Decl.) ¶ 7; Def.'s Reply, Ex. 10 (Pinansky Suppl. Decl.) ¶ 7.  The defendant also contends that the names and personally identifiable information of other persons involved in the investigation, not just the target of the investigation, is also subject to Exemption 6, Def.'s Mem. at 18, and that no amount of redaction will conceal the identity of the individuals involved, in part because the plaintiff's requests ask for records related to certain individuals, so the production of any information would necessarily identify those individuals, Def.'s Reply at 9.  The defendant states that the plaintiff's interest in the production of these records arises from "a personal desire to conduct a fishing expedition for information," and that he does not have "a legitimate public interest in any information."  Def.'s Reply at 11.

The plaintiff contends that the defendant's reliance on Exemption 6 is misplaced. He maintains that the records are not the type of "personnel, medical, or similar files" governed by Exemption 6, and there has been no showing that an "unwarranted invasion of personal privacy" will result under 5 U.S.C. § 552(b)(6) from their disclosure. Pl.'s Mem. at 23. The plaintiff opines that if the identifying information was redacted from these records, any privacy intrusion would be mitigated. Id. He adds that in weighing the importance of public disclosure, it should be remembered that only if the target of the investigation is identifiable in the records is Exemption 6 applicable, and even if the target becomes identifiable after appropriate redactions are made, the public interest in disclosure still outweighs those privacy concerns because the person most likely to be the subject of the investigation (an individual the plaintiff identifies by name) personally communicated with the plaintiff and accusing the plaintiff of being a "traitor" and "unpatriotic." Id. at 25.

There appears little question that the types of files the defendant seeks to protect under Exemption 6 fall within the scope of this exemption, as they are personnel-related and their content – the investigation of alleged wrongdoing by an SEC employee – implicates "substantial privacy concerns" of the subject of the investigation. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) ("[E]xemption [6] [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." (citation and internal quotation marks omitted)). The only question then is "whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." Id. The plaintiff contends that the target of the investigation (an investigation which presumably relates to feisty e-mail communications sent to the plaintiff and the then-Chairman of the SEC by one of the defendant's trial counsel) is a public employee and his communications have been published in the press.

Pl.'s Mem. at 25. That being the case, posits the plaintiff, "the public has an interest in knowing whether [that employee's] actions were in any way connected to the SEC's investigation of [the plaintiff]," in part considering that the employee's official government e-mail address was used. Id. at 25-26. The defendant responds that trial counsel referenced by the plaintiff is a non-managerial employee of the defendant, Def.'s Reply, Ex. 10 (Pinansky Suppl. Decl.) ¶ 8, and the plaintiff has not "provide[d] any reason to believe that [the employee] made any such statements in the context of conducting Commission business or that [the employee] ever worked on any matter relating to [the p]laintiff," Def.'s Reply at 12.

Against this backdrop, the Court must conclude that the public has some interest in knowing whether the defendant will take action if one of its employees, whose work is funded from the public coffers and utilized government resources to communicate with the plaintiff and the SEC Chairman, is utilizing his position to purportedly further private interests or harass private citizens. This case is not a situation where a requester is merely trying to acquire information regarding another private individual. And an important factor to bear in mind is that the defendant appears to want to have things both ways – relying on the one hand on the extensive media attention this litigation and the underlying basis for it have received as support for its position that the privacy of the investigated employee warrants non-disclosure of the documents, Def.'s Mem. at 19, while ignoring on the other hand the clear indication that the extent of the media coverage demonstrates the public interest in these matters. There is a compelling public interest in knowing whether the defendant conducts investigations free of misconduct by its employees and how alleged transgressions by its employees are addressed; the disclosure sought by the plaintiff would assuredly "shed light on an agency's performance of its statutory duties and its compliance with the law." Judicial Watch II, 102 F. Supp. 2d at 17

(citation omitted). That said, the individuals involved do have privacy interests in keeping personal details out of the public eye, which is the impetus for Exemption 6, but that is also why redaction is used as a safeguard in such situations.

While these are the competing interests that are at play, the concern for the Court is not whether Exemption 6 applies to information contained within these records, because even on the scant representations of the defendant it would seem to apply to portions of the record, see Def.'s Mem., Ex. 3 (Hall Decl.) ¶ 12; id., Ex. 4 (Pinansky Decl.) ¶ 6; id., Ex. 5 (Tyler Decl.) ¶ 6, but whether the public interest favors disclosure of some parts of the records. And that balancing cannot be properly conducted based upon the vague assertions provided by the defendant, as greater detail concerning the content of each record is needed to determine whether that information is exempted from disclosure. This particularized examination is required because Exemption 6 is not one of the exemptions that inherently shields records in their entirety, see, e.g., Billington v. U.S. Dep't of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000) (remanding for a segregability determination concerning records over which the agency claimed Exemption 6 protection), and information that does not pertain just to any individuals involved in an investigation, but rather to the logistics of an investigation (such as routing numbers, dates, stock types involved, and event dates), which the defendant acknowledges is included in these records, see Def.'s Mem., Ex. 3 (Hall Decl.) ¶¶ 7-12, is not protected from disclosure, see Billington, 233 F.3d at 586 (remanding for inquiry as to whether Exemption 6 applied to the records in their entirety because it was "uncertain that personal identifying information so permeates the document that no part of it can be released"). The defendant thus far only speculates that "[d]isclosure of such information [as is contained in records 1-77] could amount to an invasion of privacy of the individuals identified," id., Tyler Decl. ¶ 5 (emphasis added), but the defendant,

36

who carries the burden, must do more than that to demonstrate a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Therefore, with respect to records 78-80, while the Court again does not dispute that the names of the individuals involved in the investigations, as well as their contact information may be withheld for privacy reasons, the defendant has failed to establish that the withheld records contain exclusively such information, or that no other information in the records can be segregated from the personally identifying information in order that redacted disclosures can be made. Upon the representations currently before the Court, the only conclusion the Court can reach in light of the presumption in favor of disclosure is that redacted versions of the records must be disclosed.

### 4.      Exemption 7(A)

Under the FOIA, agencies are authorized to withhold "records of information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In order to justify the withholding of records an agency must show that (1) a law enforcement proceeding for which the records were compiled is pending or reasonably prospective and (2) that the release of the information could reasonably be expected to cause some articulable harm. In crafting this Exemption, "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigation or placed at a disadvantage when it came time to present their cases." Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 313 (D.C. Cir. 1988) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978)). Nonetheless, this exemption is not meant to be a "blanket exemption" for any files or records that are relevant to an investigation –

their disclosure must be reasonably expected to interfere in a "palpable, particular way" with the investigation.  North v. Walsh, 881 F.2d 1088, 1100 (D.C. Cir. 1989).  And a document that is merely "useful" to a requester who is (or was) the subject of an investigation is insufficient to merit disclosure under the FOIA.  Id. at 1099-1100.

The defendant maintains that documents 9 and 16-18 are exempt from disclosure pursuant to Exemption 7(A).  See Def.'s Reply, Ex. 9.  According to the Vaughn index, these records consist of e-mails between employees of the defendant related to employment leave requests, an internal investigation, and a recommendation for employee discipline.  Id.  The defendant contends that it is justified in withholding these records because they derive from "the Division of Enforcement's and the OIG's active and ongoing investigations."  Def.'s Mem. at 21; see also id., Ex. 6 (Riewe Decl.) ¶¶ 5-11; id., Ex. 7 (Declaration of Noelle L. Frangipane) ("Frangipane Decl.") (Frangipane Decl.) ¶ 11.  The defendant has categorized the records and describes generally how disclosure of each category could cause harm to the defendant's investigatory interests.  Id., Ex. 7 (Frangipane Decl.) ¶ 9.

The plaintiff counters that the defendant has not carried its burden under Exemption 7(A) because an internal audit of the defendant's practices concluded that the defendant overuses Exemption 7(A) to withhold records from FOIA requesters.  Pl.'s Mem. at 29.  The plaintiff contends that the categories of the withheld documents designated by the defendant are arbitrary, overbroad, and lack the requisite specificity to warrant their non-production.  Id. at 33.  The plaintiff asserts that the defendant has not sufficiently articulated "any potential nexus between disclosure and any potential harm to an enforcement proceeding" sufficient to justify the withholding of records in their entirety.  Id. at 34.  Finally, the plaintiff contends that because the defendant produced documents related to him during the discovery process in ongoing litigation

between the parties in Texas, see SEC v. Cuban, 634 F. Supp. 2d 713 (N.D. Tex. 2009), but those same documents have not been produced to him in this FOIA litigation based on the defendant's claim that all records related to the plaintiff are shielded from production by 7(A), the defendant's claims of accurate processing and its reliance on Exemption 7(A) "are, at a minimum, incorrect and unreliable" and therefore must be rejected. Pl.'s Reply at 20-23.

Exemption 7(A) only justifies withholding records compiled for law enforcement purposes for a limited time while an investigation is ongoing. 5 U.S.C. § 552(b)(7)(A). And it is with respect to Exemption 7(A) that the defendant makes its most detailed submission in support of its non-production of responsive records. Whatever the merits to the plaintiff's assertions that the defendant has in the past overused its reliance on Exemption 7(A), it cannot be assumed that such past practice casts doubt upon its reliance on Exemption 7(A) in this case. It also cannot be concluded, as the plaintiff urges, that because records produced in the Texas litigation might be the same records as those that were not produced here renders the defendant's reliance on Exemption 7(A) irrational. As the Court indicated in its earlier discussion regarding the adequacy of the defendant's search, the law is clear that an agency's search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request," Meeropol, 790 F.2d at 956. The Court therefore declines to reject the defendant's reliance on Exemption 7(A) because it may be the case that records, which may or may not be part of the defendant's investigatory file, were not produced. To do otherwise would result in the Court acting on pure speculation, which obviously it cannot do.

Indeed, the Court finds that because the investigation is ongoing Exemption 7(A) may be properly relied upon by the defendant to withhold records 9 and 16-18; the defendant's showing is sufficient even though it has not specifically described the basis for the non-disclosure in each

instance, because extensive specificity is not required for Exemption 7(A) where providing such detail would undermine the precise reason for the non-disclosure. Juarez v. Dep't of Justice, 518 F.3d 54, 59 (D.C. Cir. 2008) ("'the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against'" in approving Exemption 7(A) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 236 (1978))). The defendant has therefore described in sufficient detail the nature of the records it has withheld and the harm that could befall the agency if these records are prematurely released. See Def.'s Mem., Ex. 6 (Riewe Decl.) ¶¶ 7-12; id. Ex. 7 (Frangipane Decl.) ¶ 9. The Court also accepts the defendant's representations that release of the records 9 and 16-18 might reveal its investigative strategy and findings concerning the investigation before they are finalized. However, this justification for withholding the records is only temporary and the defendant must be prepared to make a continuing showing to justify its continued withholding of the Exemption 7(A) records in full.

### 5. Exemption 7(C)

Exemption 7(C) is designed to protect the personal privacy interests of individuals named or identified in "records or information compiled for law enforcement purposes," to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C);[10] see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 756 (1989). In order to determine whether a

---

[10] It bears noting that while similar, the reach of the privacy interest protected under Exemption 7(C) is much broader that the reach of Exemption 6. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 165-66 (2004) ("This provision [of Exemption 7(C)] is in marked contrast to the language in Exemption 6, pertaining to 'personnel and medical files, where withholding is required only if disclosure would constitute a clearly unwarranted invasion of personal privacy.' The adverb 'clearly,' found in Exemption 6, is not used in Exemption 7(C). In addition, 'whereas Exemption 6 refers to disclosures that would constitute an invasion of privacy,' Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute such an invasion.'" (citations and internal quotation marks omitted)).

withholding by an agency is proper, an individual's right to privacy must be weighed against the public's right to disclosure. Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1115 (D.C. Cir. 2007); Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Where a legitimate privacy interest is implicated, the requester must "[(1)] show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and [(2)] show the information is likely to advance that interest." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 158 (2004).

Stated in alternative terms: "[W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' rather than on the particular purpose for which the document is being requested." Reporters Comm., 489 U.S. at 772 (citation and internal quotation marks omitted). And that purpose cannot have as its objective use of the FOIA as a means for a requester to spy on another private citizen; rather, the request must have the objective of obtaining a response that "sheds light on the conduct of [a] Government agency or official." Id. at 773. Thus, a request that seeks "information that would explain how the disciplinary procedures actually functioned" is permissible, id., but a request seeking information regarding "private citizens that happens to be in the warehouse of the Government," such as one's criminal history, is not the proper subject for a FOIA request. Id. at 774.

The defendant maintains that documents 9, 16-18, and 78-80 are exempt from disclosure pursuant to Exemption 7(C). See Def.'s Reply, Ex. 9. These records consist of e-mails authored by employees of the defendant concerning employment leave requests, an internal agency investigation, and a recommendation for employee discipline. Id. According to the defendant, it

41

has properly withheld these records pursuant to Exemption 7(C) because the records are "law enforcement records, either from an OIG investigation or from a securities enforcement investigation," and the privacy interests of the persons involved outweigh any interest in public disclosure of the records.  Def.'s Mem. at 21.  According to the defendant's declarant, the Deputy Inspector General in the Office of Inspector General of the Securities and Exchange Commission, who is familiar with these records, the internal SEC e-mail communications were withheld because their disclosure could interfere with an ongoing investigation by informing someone external to the investigation of the identity of individuals who have been interviewed, what documents have been requested, what sources of information exist, and what information the agency considers relevant to the investigation.  Def.'s Mem., Ex. 7 (Frangipane Decl.) ¶ 9(B). The declarant states that records 9 and 16-18 were withheld because they contain information related to an ongoing OIG investigation into internal misconduct by SEC employees.[11]  Id. ¶ 11.

The plaintiff contends that the defendant's reliance on Exemption 7(C) to withhold these records in their entirety is improper because it has not shown that its investigation includes anything other than ordinary monitoring of its employees, Pl.'s Mem. at 28, nor has the defendant established that any resulting invasion of privacy is "clearly unwarranted" when balanced against the public interest as required by 5 U.S.C. § 552(b)(6), Pl.'s Reply at 18.  The plaintiff further contends that the defendant has not made a showing that any information in the records exempt from disclosure under Exemption 7(C) cannot be segregated from the remainder of the records. Pl.'s Mem. at 28.

---

[11]      Records 9 and 16-18 do not relate to an investigation conducted by the Office of Human Resources.  Def.'s Reply, Ex. 11 (Tyler Suppl. Decl.) ¶ 4.

The first point to consider is that the request in this case involves one individual seeking records regarding another individual. But what distinguishes the facts in this case from those in Reporters Committee, where a requester sought the disclosure of the rap-sheet (the criminal record) of another private individual, 489 U.S. at 751, and the Supreme Court concluded the privacy interest under Exemption 7(C) in such circumstances "is in fact at its apex," 489 U.S. at 780, is that the subject of the plaintiff's request there was not a government official who allegedly committed improper acts while performing his official duties. Here, the subject of the plaintiff's FOIA request is a government employee who, if the plaintiff's allegations are correct, was utilizing the government e-mail system to harass the plaintiff. Pl.'s Mem. at 25. Accordingly, here, disclosing the information sought by the plaintiff could accord him and the public in general insight into how the defendant addresses allegations of employee misconduct and misuse of government resources, information of unquestionable public interest. However, it is equally clear that the identities of the subject of the investigation and those involved in the investigative process is not nearly as significant as the actions (or lack thereof) taken by the defendant, and the disclosure of the identities of these individuals would likely compromise their privacy interests. Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984) (holding that the names of cooperators, investigators, and other "'third persons mentioned in the documents'" were properly withheld under Exemption 7(C) (citation omitted)). But even if the Court accepts the defendant's representations that the identify of persons connected with the investigation should not be disclosed for the reasons the defendant offers, Def.'s Mem., Ex. 7 (Frangipane Decl.) ¶ 9(B), including "the stigma of being associated with any law enforcement investigation," Amuso v. U.S. Dep't of Justice, 600 F. Supp. 2d 78, 97 (D.D.C. 2009) (citing

Reporters Comm., 489 U.S. at 773-75), the issue of whether Exemption 7(C) has been properly relied upon can not yet be resolved on the existing record.

Simply, the defendant has not justified withholding the remainder of the information likely contained in the records. Nothing in the defendant's proffer assists the Court in assessing why redacting the names and any other identifying characteristics of the persons involved in the OIG investigations will not adequately protect the privacy interests at stake, a finding that the Court must be able to make to sanction a complete withholding. See Stolt-Nielsen Transp. Grp. Ltd., 534 F.3d at 734 (indicating that the district court must pass on the question of the segregability of the records withheld). The defendant's representation that its reliance on Exemption 7(C) is justified are not convincing, and how the Exemption applies to records 9 and 16-18 is addressed in only one short paragraph in the Deputy Inspector General's statement. The Court is essentially left to rely on the vague descriptions provided in the Vaughn index, which are nothing more than conclusory. On these submissions, the defendant has not met its burden of providing the Court with information from which it can confidently conclude that the privacy rights of the individuals referenced in the records can be protected only by the non-production of all of the records in their entirety, when weighed against the public's right to disclosure.

## C.     The Privacy Act

The Privacy Act authorizes individuals to bring suit to challenge an agency's refusal "to comply with an individual request" for the production of records concerning the requester. 5 U.S.C. § 552a(b), (g)(1).     The defendant's Privacy Act regulations require an agency to either grant or deny access to the record(s) requested "within 30 days," and if a request is denied, to communicate that denial to the requester. 17 C.F.R. § 200.304(c)-(d) (2007).

The defendant contends that the plaintiff "has no right of access to the documents he seeks under the Privacy Act" because they are investigative records exempt from disclosure pursuant to 17 C.F.R. §200.313, and therefore the defendant did not waive its right to withhold the records even if it failed to respond to the plaintiff's request.  See Def.'s Mem. at 33; Def.'s Reply at 17.  The plaintiff responds that because the defendant "never acknowledged [his] Privacy Act request, never responded to his Privacy Act request, never informed him that access to his records under the Privacy Act was denied or why access was denied, and never advised him of his right to appeal the SEC's denial of access," it cannot now for the first time and in the midst of litigation raise its objections to production of the records requested.  Pl.'s Mem. at 37.  Because the plaintiff contends that the defendant's objection to production was untimely and therefore waived, he asks the Court to compel the defendant's compliance.

While it does appear that the defendant's compliance with the Privacy Act was less than clear, the defendant did state that it was withholding records responsive to the categories that the plaintiff sought in his request letter pursuant to the FOIA and the Privacy Act, see, e.g., Def.'s Mem., Ex. 1 (Winter Decl.), Attach. D (Feb. 5, 2009 Letter from Mark P. Siford to David Ross) at 1 (indicating the defendant was withholding records responsive to categories 2 ("[r]ecords which mention or relate to Mr. Cuban") and 5 ("[r]ecords relating to Mr. Cuban's Wells Submission dated September 21, 2007") of the plaintiff's Request Letter II).  Although the Court does not condone evolving positions seemingly formulated during the course of litigation that surprises the opponent, given the state of the record the defendant's position does not appear to vary materially from its original stance taken during the administrative process.  Thus, even though it appears that the defendant did not explicitly rely upon 17 C.F.R. §200.313, as it now does, the agency is nonetheless entitled to refine its position.  See Barnard v. Dep't of Homeland

45

Sec., 598 F. Supp. 2d 1, 25 n.16 (D.D.C. 2009) ("there is no requirement that an agency administratively invoke [a Privacy Act] exemption in order to later rely on it in federal court"); accord Young v. CIA, 972 F.2d 536, 538 (4th Cir. 1992) ("[A]n agency does not waive FOIA exemptions by not raising them during the administrative process.").  The Court will therefore consider the merits of any future challenges raised by the plaintiff to the defendant's assertion that a withholding of records is sanctioned by the Privacy Act.

**D.      The Defendant's Request to Bifurcate and Stay the Plaintiff's Remaining Three Requests**

Under the FOIA, an agency receiving a request must determine whether to comply with the request within 20 working days.  See 5 U.S.C. § 552(a)(6)(A)(i).  The Court may, however, "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."  § 552(a)(6)(C)(i).  The defendant here seeks three additional years to respond to the plaintiff's request, which involves the review of 107 boxes of documents.  Def.'s Mot. to Stay at 2.  The plaintiff, understandably, takes the position that the request for a three-year stay is unreasonable and unsupported by the record.  Pl.'s Opp'n to Stay at 2.

The defendant has explained in great detail the extent of the demands it is experiencing responding to the plaintiff's requests and requests like it from other requesters.  See generally Def.'s Mot. to Stay, Ex. 1 (Declaration of Margaret Celia Winter).  Those demands include thousands of requests and the resultant review of large volumes of documents, a task divided among roughly only two dozen SEC employees and forty "FOIA Liaisons within the agency's various offices and divisions."  Id. ¶¶ 6-11, 21.  Requests are generally responded on a first-in, first-out track.  Id. ¶¶ 14-15.  Despite these representations, three years is an extraordinarily long

period of time for the plaintiff to await the production of all records responsive to his FOIA request.  Also, given the time that has elapsed since this case was initiated (over fifteen months ago) and when the defendant's motion to stay was filed (over seven months ago); the significant progress the defendant represents it has made over the past several years in improving its response time to FOIA requests; and the fact that the defendant's response time hinges, at least in part, on the duration of other litigation that may or may not remain active, id. ¶¶ 53-58, the Court will deny the defendant's motion without prejudice and conduct a status conference to assess the current status of the defendant's processing of the plaintiff's requests to determine whether granting the defendant additional time to fulfill its statutory obligation is appropriate.  Also at that hearing, the defendant should be prepared to present witnesses associated with the ongoing investigation that provides the basis for its withholding of records under Exemption 7(A) of the FOIA.  If the investigation is still active, then the defendant must submit proof that another exemption applies that justifies the complete withholding of records 9 and 16-18.  The Court further anticipates setting a timeline for the production of the redacted records versions of these records at the hearing or entertaining alternative proposals from the parties for expeditiously advancing this case to its final resolution.[12]

---

[12]        In the event the defendant seeks reconsideration of any ruling in this Opinion with respect to the records not yet produced, and proffers additional declarations or other evidence upon which its position is based, the following observations are noted.  As the Court has indicated throughout this Opinion, most of the defendant's representations were extremely limited, vague, and conclusory as to its reliance on Exemptions 2, 5 (with respect to the attorney-client privilege, the deliberative process privilege, and the attorney work-product doctrine), 6, 7(A) and 7(C), and it was the defendant's failure to provide proper justification for its withholding of records that resulted in summary judgment being partially entered for the plaintiff.  For example, while two declarations submitted with respect to the adequacy of the defendant's search (an issue on which the plaintiff bore the burden of proving unreasonable) contained 157 paragraphs and 18 paragraphs respectively, the defendant's declarations with respect to the applicability of the multiple exemptions to the 80 different records listed in its Vaughn index (issues on which the defendant bore the burden to prove) ranged from 4 to 13 paragraphs (paragraphs that were frequently only a sentence or two in length, inclusive of the necessary foundational information relating to the declarant's employment status and competency).  It was upon these minimally supported declarations that the defendant relied to satisfy its burden.  In no way is the Court indicating that the defendant must bury the Court and the plaintiff in paper and finite

(continued . . . )

# IV.  CONCLUSION

For the foregoing reasons, the Court finds that both parties' cross-motions for summary judgment must be granted in part and denied in part.[13]  Specifically, the Court finds that the defendant's search for records responsive to categories 7, 11, 12, and 13 of Request Letter I was inadequate.  Also, the defendant's reliance on Exemptions 2 and 6 to withhold records 78-80, and Exemption 7(C) to withhold records 9, 16-18, and 78-80, is not sufficiently substantiated to meet its burden to withhold these records in their entity.  The same is tr+ue in regard to the assertion of Exemption 5.  The defendant has also failed to satisfy its burden of showing that records 11, 13, 21, 25-26, 29, 32, 34-35, 37, 39, 41-44, 53, 55, 57 59, and 61-63 may be withheld under the attorney-client privilege; records 1-3, 9, 11, 13-15, 17, 19, 21-22, 25-29, 32-35, 37-46, 48-57, 59-64, 69, 71, and 73-76 may be withheld under deliberative process protection; or records 10-

---

( . . . continued)

detail to justify its invocation of a FOIA exemption.  At the same time, however, the defendant can hardly expect to meet its burden with abbreviated and uninformative information that precludes the Court from independently evaluating the merits of the defendant's positions.  In many cases the defendant chose to merely group together multiple documents into general subject areas and universally asserted the applicability of exemptions to those records, rather than distinguishing the content of specific records, which is necessary to establish that redactions are unwarranted or impossible.  The purpose for requiring a <u>Vaughn</u> index is to provide courts with more than just "conclusory and generalized allegations of exemptions," <u>Campaign for Responsible Transplantation v. Food & Drug Admin.</u>, 511 F.3d 187, 196 (D.C. Cir. 2007) (citation omitted), because "a withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and <u>correlating those claims with the particular part of a withheld document to which they apply</u>." <u>Krikorian v. Dep't of State</u>, 984 F.2d 461, 467 (D.C. Cir. 1993) (emphasis in original) (citation and internal quotation marks omitted). The defendant must simply put more effort into its submission to convince the Court that it is entitled to the relief it seeks.

It is also worth noting that while the Court at this juncture is declining to conduct <u>in camera</u> review of disputed records, it may in the future decide that such review is necessary.  <u>In camera</u> review is unnecessary at this point not because the Court can make a determination on whether the records can be released based on the descriptions provided, but because most of the defendant's descriptions are woefully inadequate.  And the Court cannot permit an agency to transfer the burden of conducting the review of these records to the Court by providing inadequate descriptions of the records; that is the defendant's responsibility.  It is only those situations where descriptions provided by the agency are as detailed as possible, but nonetheless fail to provide the Court with sufficient information upon which to base its determinations, when <u>in camera</u> review should be exercised.  <u>See id.</u> ("We therefore leave it to the district court to determine on remand whether more detailed affidavits are appropriate or whether an alternative such as <u>in camera</u> review would better strike the balance between protecting sensitive foreign relations information and disclosing non-exempt information as required by the FOIA.")

[13]     The Court will issue an Order consistent with this Memorandum Opinion.

11, 13-15, 18-29, 31-46, 48-64, and 77 may be withheld under the attorney work-product privilege. On the other hand, the Court finds that the defendant has established that records 9 and 16-18 may be withheld under Exemption 7(A) during the pendency of the ongoing investigation; however, given the passage of time since that exemption was first invoked, at the hearing the Court will conduct in this matter the defendant should be prepared to establish by the testimony of representatives involved in the investigation whether the investigation is still ongoing, as well as the anticipated duration of the investigation. Moreover, to the extent that the Court has found that the defendant cannot rely on an exemption to withhold a record in its entirety, the defendant is obligated by the FOIA to produce a complete or redacted version of the record to the plaintiff, and must do so forthwith. Finally, the Court finds that it must deny without prejudice the defendant's motion for a three-year stay of this litigation pending its production of responsive records, and that at the hearing the Court will conduct, it will determine how much additional time, if any, the defendant is entitled to receive to complete the processing of the plaintiff's FOIA requests.

_____/s/_____
REGGIE B. WALTON
United States District Judge