# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| MARK CUBAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 09-0996 (RBW)

_____)

## MEMORANDUM OPINION

This matter is currently before the Court on the defendant's Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 54. See Defendant's Motion for Reconsideration ("Def.'s Mot. Recons."); Plaintiff's Memorandum in Opposition to Defendant's Motion for Reconsideration. ("Pl.'s Opp'n Mot. Recons.").[1] The defendant seeks reconsideration of the Court's September 22, 2010 decision holding that it failed to offer sufficient evidence to substantiate the adequacy of its search for records responsive to categories 7, 11, 12, and 13 of the plaintiff's Request Letter I or the propriety of its withholding of certain documents under Freedom of Information Act ("FOIA") Exemptions 2, 5, 6, 7(C), and 7(A).[2] Def.'s Mot. Recons. at 1-2; see September 22, 2010 Memorandum Opinion ("Sept. 22 Mem. Op.").  For the reasons

_____

[1]  In deciding this motion the Court also considered the following filings: (1) the Defendant's Reply in Support of its Motion for Reconsideration ("Def.'s Reply"), and (2) for, comparative purposes, the Defendant's Reply to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment and Response to Plaintiff's Cross Motion for Summary Judgment ("Def.'s Mem."), Exhibit ("Ex.") 9 (Revised Vaughn Index)—the Revised Vaughn Index originally submitted by the defendants on March 16, 2010 and relied on by the Court in rendering its September, 22, 2010 Memorandum Opinion.

[2]  Request Letter I is a FOIA and Privacy Act request submitted in the form of a letter dated December 19, 2008, from David M. Ross to the defendant.  See Complaint ¶ 6.

set forth below, the Court will grant in part and deny in part the defendant's Motion for Reconsideration.

## I. BACKGROUND

The facts in this case were discussed in detail in the Court's September 22, 2010 Memorandum Opinion, and thus will only be reiterated here to the extent necessary to resolve the pending motion.  <u>See</u> Sept. 22 Mem. Op. at 3-8.  In brief, the plaintiff, Mark Cuban, brought this action against the defendant, the Securities and Exchange Commission ("SEC"), pursuant to the FOIA, 5 U.S.C. § 552 (2006), and the Privacy Act, 5 U.S.C. § 552(a) (2006), challenging the adequacy of the defendant's searches for responsive records and seeking to compel the release of records the defendant had refused to disclose.  Complaint ("Compl.") ¶ 1.  On September 22, 2010, the Court granted in part and denied in part both parties' cross-motions for partial summary judgment and denied without prejudice the motion to bifurcate and stay the proceedings in this case.  Sept. 22 Mem. Op. at 48-49.  The Court held that the SEC did not sufficiently substantiate either (1) the adequacy of its search for records responsive to categories 7, 11, 12, and 13 of Request Letter I, or (2) its withholding of certain documents under FOIA Exemptions 2, 5, 6, 7(C), and 7(A).[3]  <u>Id.</u>  In reaching these conclusions, the Court found that the reasons provided by the SEC for withholding certain documents were "minimally supported," "extremely limited," "vague," and "conclusory."  <u>Id.</u> at 47 n.12.  On November 5, 2010, the defendant filed its Motion for Reconsideration asking the Court to reconsider the September 22, 2010 ruling based on its Second Revised <u>Vaughn</u> Index and supplemental declarations.  Def.'s Mot. Recons. at 1.  On November 19, 2010, the plaintiff filed his Opposition to the Defendant's Motion for

---

[3]     The documents originally withheld under Exemption 2 have since been released to the plaintiff.  Def.'s Mot. Recons. at 2.  Therefore, the plaintiff's claims regarding Exemption 2 in the September 22, 2010 Memorandum Opinion are now moot.

Reconsideration, arguing that the SEC's Second Revised <u>Vaughn</u> Index and supplemental

declarations remained conclusory and that, at a minimum, <u>in camera</u> review of the contested

documents is warranted.  Pl.'s Opp'n Mot. Recons. at 1.

## II.  STANDARD OF REVIEW

The defendant's motion is brought pursuant to Federal Rule of Civil Procedure 54.  Def.'s

Mot. Recons. at 2.  Rule 54 states that

> any order or other decision, however designated, that adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all the parties does not end the
> action as to any of the claims or parties and may be revised at any time before the
> entry of a judgment adjudicating all the claims and all the parties' rights and
> liabilities.

Fed. R. Civ. P. 54(b).  Court action that terminates fewer than all claims in a case is considered

interlocutory rather than a final decision and subject to revision at any time.  <u>See</u> <u>Langevine v.</u>

<u>District of Columbia</u> 106 F.3d 1018, 1023 (D.C. Cir. 1997) (describing interlocutory orders as

not subject to the law of the case doctrine and thus, the orders may always be reconsidered prior

to final judgment); <u>In Def. of Animals v. Nat'l Insts. of Health</u>, 543 F. Supp. 2d 70, 75 (D.D.C.

2008).  However, a motion for reconsideration is discretionary and should not be granted unless

the movant presents either newly discovered evidence or errors of law or fact which need

correction.  <u>Nat'l Trust for Historic Pres. v. Dep't of State</u>, 834 F. Supp. 453, 455 (D.D.C. 1993);

<u>see also</u> <u>Bolden v. Ashcroft</u>, 515 F. Supp. 2d 127, 135 (D.D.C. 2007) (providing that a motion

for reconsideration will be considered when new facts are presented).

## III.  LEGAL ANALYSIS

A.     <u>Adequacy of the Defendant's Searches for Responsive Records</u>

An agency to which a request for the production of documents is made is obligated to

demonstrate the adequacy of its search for those documents by providing a "reasonably detailed

affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Ogelsby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  However, "[t]here is no requirement that an agency search every record system."  Id.

In its September 22, 2010 Memorandum Opinion, the Court explained why it was not convinced that the defendant had fulfilled its search obligations.  Sept. 22 Mem. Op. at 12.  The Court reached this conclusion because it found the supplemental declaration of Noelle L. Frangipane "woefully lacking of the detail necessary for the Court to assess the adequacy of the search."  Id.  Furthermore, the Court found that it was a "complete mystery" whether there are any reasonable search methods the defendant could employ.  Id. at 14.  Thus, the Court found that the information about the search supplied by the defendant lacked the requisite detail to merit granting summary judgment to the defendant and instead instructed the defendant to provide "more detail-specific declarations."  Id.  The Court will examine whether the defendant has complied with the Court's directive.

1. Category 7

Category 7 of the plaintiff's Request Letter I seeks information concerning SEC personnel who traded in Copernic, Inc. securities. [4]  Def.'s Mot. Recons. at 2-3.  In support of its motion for reconsideration, the SEC has submitted the declarations of Shira Pavis Minton and David Cunningham, which "describe the forms the SEC collected . . . about securities owned by SEC personnel, the efforts the SEC staff made to search those forms, and why a further search is

---

[4]        Category 7 requests "[r]ecords of any trading history by SEC personnel in Copernic securities."  Mot. for Recons., Ex. 7 (Declaration of Noelle Frangipane) at Ex. B (December 19, 2008 Request Letter from Dewey & LeBoeuf to the SEC) ("Request Letter").

not feasible."[5]  Id. at 3; see id., Exs. 16 (Declaration of Shira Pavis Minton ("Minton Decl.")) &

17 (Declaration of David Cunningham ("Cunningham Decl.")).

The plaintiff asserts that the SEC's declarations submitted in support of its motion for

reconsideration again demonstrate that the SEC's search for responsive documents was

inadequate.  Pl.'s Opp'n Mot. Recons. at 2.  The plaintiff further contends that the SEC's assertion

that a manual search for responsive documents is "not feasible" should be rejected, arguing that

searching twelve drawers for the two types of documents not available electronically is not an

unreasonable burden.  Id. at 2-3 & n.6.

In the September 22, 2010 Memorandum Opinion, the Court emphasized that the

declaration of William Lenox, which stated that "it is not possible to perform an electronic

search of these records," was insufficient because it "d[id] not indicate with specificity how the

employee files are maintained, how they could be searched, and why an electronic search of the

files is not even feasible."  Sept. 22 Mem. Op. at 13.  Contrary to the plaintiff's assertions, the

declarations of David Cunningham and Shira Pavis Minton now contain these details.   The

Cunningham declaration explains that the files can be searched electronically, and recognizes

that the SEC did not realize this earlier.  See Def.'s Reply at 1 n.1; Def's Mot. Recons., Ex. 17

(Cunningham Decl.) ¶ 3.  As the SEC correctly points out, this new revelation has no bearing on

the evaluation of the SEC's good faith.  See Nat'l Inst. of Military Justice v. U.S. Dep't of Def.,

404 F. Supp. 2d 325, 333-34 (D.D.C. 2005) ("While it now seems obvious that the defendant's

initial search was inadequate, and it is clear that the defendant could have been more diligent in

its initial response to the plaintiff's FOIA request, this does not demonstrate bad faith.").

---

[5]        Declarations from these two individuals had not previously been supplied to the Court.

The SEC has identified three forms routinely completed by SEC employees that may contain the "trading history by SEC personnel in Copernic securities" that the plaintiff's Request Letter I seeks to obtain with Category 7: the Confidential Financial Disclosure Report, the Public Financial Disclosure Report, and Form 681.  See Def.'s Mot. Recons., Ex. 16 (Minton Decl.) ¶ 5; id., Ex. 17 (Cunningham Decl.) ¶ 6.  The declaration of Shira Pavis Minton describes the Confidential Disclosure Report ("OGE 450") and the Public Financial Disclosure Report ("SF 278").  Id., Ex. 16 (Minton Decl.) ¶¶ 6-17.  The OGE 450, which contains information concerning an employee's holdings, is "maintained exclusively in paper form for a period of six years."  Id., Ex. 16 (Minton Decl.) ¶ 8.  The SEC currently has paper copies of the OGE 450s as of 2004, and the files are organized alphabetically by the employees' surnames.  Id., Ex. 16 (Minton Decl.) ¶¶ 8, 9.  "These paper files are not organized, categorized, or indexed by [the name of the] security."  Id., Ex. 16 (Minton Decl.) ¶ 9.  The OGE 450 cannot be searched electronically for specific securities and can only be searched by a "manual page-by-page, line-by-line review of thousands of paper OGE 450s filed by every current and former SEC employee during the past six years."  Id., Ex. 16 (Minton Decl.) ¶ 10.  The files containing the OGE 450s "fill approximately two lateral cabinets with five drawers each." Id., Ex. 16 (Minton Decl.) ¶ 11.  Similarly, the SF 278, a form disclosing all assets owned by an SEC employee, is maintained exclusively in paper form for six years, and the SEC currently has the SF 278s from October 2004 to the present.  Id., Ex. 16 (Minton Decl.) ¶¶ 13, 14.  These documents are also organized by the employees' surnames; they are similarly not organized, categorized, or indexed by security, and cannot be searched electronically.  Id., Ex. 16 (Minton Decl.) ¶¶ 15, 16.  Searching these documents would likewise require a "manual page-by-page, line-by-line review of . . . two lateral file cabinet drawers."  Id., Ex. 16 (Minton Decl.) ¶¶ 16, 17.

While the OGE 450s and the SF 278s cannot be searched electronically, Form 681 can be. The declaration of David Cunningham describes how "[e]very acquisition or sale of a security by an employee was required to be reported to [the Office of Human Resources] on Form 681." Def.'s Mot. Recons., Ex. 17 (Cunningham Decl.) ¶ 6. "The data from some Form 681s were entered and recorded on an electronic Access database . . . [, which] contains data from approximately 145,000 forms and represents a substantial subset of the data recorded and maintained . . . ." Id., Ex. 17 (Cunningham Decl.) ¶ 8. SEC personnel conducted electronic searches of the forms for the seven entities listed in the plaintiff's FOIA request, id., Ex. 17 (Cunningham Decl.) ¶ 10, and the Cunningham declaration lists the search terms used to conduct the electronic search, id., Ex. 17 (Cunningham Decl.) ¶ 11 (listing "copernic," "mamma," "intasys," "smartel," "calltech," "health," "care," "product," and "quartet" as the search terms used). The declaration also explains that the manner in which the search was conducted would have yielded results even where only a fragment of these search terms existed in a particular document. Id., Ex. 17 (Cunningham Decl.) ¶¶ 11, 12 ("By placing the . . . search terms . . . between asterisk marks, quotation marks, and a parentheses, preceded by the word 'Like,' the Form 681 Database was searched . . . for any instance where those words appeared as a word or word fragment."). Similar to OGE 450 and SF 278, the Form 681s are also maintained for six years in paper form. Id., Ex. 17 (Cunningham Decl.) ¶¶ 14, 15. The ability to search the SEC's current electronic system is compromised by the fact that "it is not clear which Form 681s are not contained in the electronic database" and thus, to search those Form 681s not in the electronic database the agency would have to search all of the Form 681s manually, even the 145,000 forms that already have been searched electronically. Id., Ex. 17 (Cunningham Decl.) ¶ 16. The paper

copies of the Form 681s are stored in "approximately 260 linear feet of cabinet space." Id., Ex. 17 (Cunningham Decl.) ¶ 17.

The newly filed declarations of Shira Pavis Minton and David Cunningham provide the Court with the requested description of the forms, how the forms are maintained, and why the forms cannot feasibly or reasonably be searched further. The documents that could be searched electronically, the Form 681s, have already been searched, and although every single form may not have been searched, over 145,000 were searched with no results. See id., Ex. 17 (Cunningham Decl.) ¶ 8. As noted earlier, Category 7 requests "[r]ecords of any trading history by SEC personnel in Copernic securities." Def.'s Mot. for Recons., Ex. 7 (Declaration of Noelle Frangipane) at Ex. B (Request Letter). While the OGE 450s, the SF 278s, and the Form 681s not included in the electronic database could be searched manually, the electronic search of the Form 681s, which report all securities transactions by SEC employees since 2004, adequately assesses the trading history sought by the plaintiff in his FOIA request because agencies are only required to "conduct a good faith, reasonable search of those systems of records likely to possess the requested information," In't Veld v. Dep't of Homeland Sec., 589 F. Supp. 2d 16, 19 (D.D.C. 2008). And, because additional searches would "impose an unreasonable burden on the agency," Nation Mag. v. U.S. Customs Serv., 71 F.3d 885, 892 (D.C. Cir. 1995), the Court concludes that no further searches are necessary for documents requested in Category 7 of the plaintiff's Request Letter I.[6]

---

[6]     In reaching this conclusion, the Court disagrees with the plaintiff that Public Citizen, Inc. v. Department of Education, 292 F. Supp. 2d 1 (D.D.C. 2003) ("Pub. Citizen I"), where the court concluded that the individual review of 25,000 paper files was not unduly burdensome, is instructive here. Pl.'s Opp'n Mot. Recons. at 3 n.6. The review of the paper files was only one factor considered by the court in that case. There, the electronic database searched was not designed to contain the records requested and the readily available records most likely to disclose the information requested were paper files. Thus, the Court found the "more cumbersome procedure" of searching the files manually was not unduly burdensome. Pub. Citizen I, 292 F. Supp. 2d at 8. Here, a database containing responsive records, including a "substantial subset" of the Form 681s, has been searched electronically and it is the

(Continued . . . )

2. Categories 11, 12, & 13

Categories 11, 12, and 13 of the plaintiff's Request Letter I "focused upon various allegations of misconduct by SEC employees in the course of investigations." Pl.'s Opp'n Mot. Recons. at 3 n.7. With regard to categories 11, 12, and 13, which request investigatory records from the Office of Inspector General ("OIG"), the SEC has submitted the supplemental declaration of Deputy Inspector General, Noelle Maloney (formerly Frangipane), who maintains that the defendant adequately describes the OIG's search for responsive documents. Def.'s Mot. Recons. at 3; Def.'s Mot. Recons., Ex. 18 (Second Supplemental Declaration of Noelle L. Maloney ("2d. Suppl. Maloney Decl.")) ¶ 1.

The plaintiff contends that the Maloney declaration "still fails to provide the Court with a sufficient basis to determine whether additional electronic searches can or need to be conducted." Pl.'s Opp'n Mot. Recons. at 3. The plaintiff points out that Noelle Maloney stated that she "reviewed indexes of investigations maintained by the OIG," but that she does not address "what search terms were used" or "the level of detail or thoroughness with which the search for Categories 11-13 was conducted." Id.

The Court must again find the supplemental declaration of Noelle Maloney "woefully lacking of the detail necessary for the Court to assess the adequacy of the search." Sept. 22 Mem. Op. at 12. Specifically, the SEC has again fails to provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Ogelsby, 920 F.2d at 68. The supplemental declaration does not explicitly discuss categories 11, 12, and 13, nor does it describe the terms

_____

(. . . continued)
most likely form to reveal the information requested by the plaintiff. Therefore, to require the "more cumbersome procedure" of searching the files manually, line-by-line, when the files are not organized by the name of securities that were purchased, is not required in this case.

used to conduct the search. See Def.'s Mot. Recons., Ex. 18 (2d. Suppl. Maloney Decl.) ¶¶ 5, 6,

7. Thus, there is insufficient new information presented for the Court to reverse its September

22, 2010 decision. Accordingly, the Court again cannot determine the adequacy of the

defendant's searches with respect to Categories 11, 12, and 13 of Request Letter I.

B.    The Exemptions Relied Upon by the Defendant for Its Withholding of Responsive
       Documents

The SEC has produced to the plaintiff Documents 4, 10, 20, 21, 23, 24, 29, 58, 61, 66,[7]

and 78-80, with all personal identifying information redacted.[8] Def.'s Mot. Recons. at 2. The

defendant relies upon Exemptions 5, 6, 7(A), and 7(C) as grounds for withholding the remaining

documents in their entirety. Id. The documents withheld by the SEC pursuant to Exemption

7(A) concern a continuing investigation, and therefore neither those documents nor Exemption

7(A) are part of this discussion. See Sept. 22 Mem. Op. at 49 ("[R]ecords 9 and 6-18 may be

withheld under Exemption 7(A) during the pendency of the ongoing investigation; however,

given the passage of time . . . the defendant should be prepared to establish . . . whether the

investigation is still ongoing"); see also January 31, 2011 Defendant's Supplemental Status

Report ("Def.'s Suppl. Status") at 4-5 (reporting that the SEC's investigation is still active and

arguing that it therefore is still properly withholding the subject documents under Exemption

7(A)). Each of the remaining exemptions will be addressed in turn, along with the records

---

[7]    Despite its inclusion on this list, according to the Second Revised Vaughn Index, the defendant has
produced Document 66 in full. See Def.'s Mot. Recons., Ex. 15 (Second Revised Vaughn Index) at 31.

[8]    Documents 4, 10, 20, 21, 23, 24, and 58 were withheld only in part and pursuant only to Exemption 6. See
Def.'s Mot. Recons., Ex. 15 (Second Revised Vaughn Index) at 2, 4, 8-10, and 27. After reviewing the Second
Revised Vaughn Index, the Court now concludes that the defendant need not disclose the material redacted from
these documents, as the Second Revised Vaughn Index reveals that the redactions consist of names and contact
information, see, e.g., id., Ex. 15 (Second Revised Vaughn Index) at 4 (explaining that "[t]he names and identifying
information of [SEC employees] and a personal cell phone number have been redacted"). Such redactions are
consistent with the Court's earlier opinion in this case, which held "that the names of the individuals involved in the
investigations [and] their contact information may be withheld for privacy reasons." Sept. 22 Mem. Op. at 37.

identified in the defendant's Second Revised <u>Vaughn</u> Index and the exemptions invoked as the basis for their nonproduction.

1.  <u>Exemption 5</u>[9]

Exemption 5 of the FOIA provides that "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure under the FOIA.  5 U.S.C. § 552(b)(5).  Three traditional evidentiary and discovery privileges are encompassed by Exemption 5: (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege.  <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 148-49 (1975); <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 862-66 (D.C. Cir. 1980).  The defendant continues to rely on all three of these components of Exemption 5 to withhold almost all of the records in its Second Revised <u>Vaughn</u> Index.  The Court will again evaluate in turn each privilege asserted.

a.  Deliberative Process Privilege

"To qualify under Exemption 5 [based on the deliberative process privilege], a document must . . . be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.  A document that does nothing more than explain an existing policy cannot be considered deliberative."  <u>Pub. Citizen, Inc. v. Office of Mgmt. & Budget</u>, 598 F.3d 865, 876 (D.C. Cir. 2010) <u>("Pub. Citizen II")</u> (citation and internal quotation marks omitted).  The Court previously found that the defendant did not make the necessary showing to justify that its withholdings were within the protective realm in which deliberative discussions are accorded safe haven.  Sept. 22 Mem. Op. at 22.  Moreover, the SEC's prior invocation of the deliberative process privilege "completely lack[ed] any detail regarding any

---

[9]     In light of the Court's prior opinion in this case and the extent of the Court's discussion of Exemption 5 in that opinion, <u>see</u> Sept. 22 Mem. Op. at 19-31, the Court will not repeat that discussion here.

particular record and d[id] nothing more than generally state that Exemption 5 [was] satisfied." Id. Furthermore, neither the defendant's declarations nor its description in the Revised Vaughn Index stated "specifically why the wholesale redaction of these records is warranted." Id. at 24. The Court therefore ordered that the SEC redact and disclose the records as instructed. Id.

The SEC is withholding Documents 1-3, 11, 13, 14, 22, 25-28, 29, 32, 33-35, 37-46, 48, 49, 52-57, 59-60, 61 . . . , 62-64, 69, 71, and 73-76 (collectively the "DP documents") on the ground that they are protected from disclosure under the deliberative process privilege.[10] See Def.'s Mot. Recons. at 3. The defendant points to the Second Revised Vaughn Index and the Second Supplemental Declaration of Nancy Ellen Tyler as evidence that the documents relate to "several disciplinary proceedings and contain or reflect the internal deliberations of SEC management . . . on potential disciplinary actions." Id. at 4. And the defendant maintains that the "Second Revised Vaughn Index explains the deliberative nature of each DP document." Id.

The plaintiff, on the other hand, argues that the "SEC's newly submitted materials are scarcely more informative than those already held insufficient by the Court." Pl.'s Opp'n Mot. Recons. at 6. Accordingly, the plaintiff also asserts that the Second Revised Vaughn Index "is not more informative[,] and [it] still asserts in conclusory fashion that the documents contain predecisional deliberations." Id.

With regard to the documents withheld under the deliberate process privilege, the Court agrees with the plaintiff that, except for Documents 11, 42, 45, and 62, sufficient new facts have not been presented for the Court to revise its previous decision that the SEC "must redact and

_____

[10]     With the exception of Documents 29 and 61, which the SEC has withheld only in part, all of these documents are being withheld in full. The Court notes, however, that there is a discrepancy between the defendant's motion for reconsideration, which seems to indicate that Document 3 is being withheld in part, and the Second Revised Vaughn Index, which indicates that Document 3 has been withheld in full. See Def.'s Mot. Recons. at 3; id., Ex. 15 (Second Revised Vaughn Index) at 2.

disclose these records in the manner indicated." Sept. 22 Mem. Op. at 24. For example, concerning Document 59, the Second Revised <u>Vaughn</u> Index only adds the phrase, "reflect[s] predecisional deliberations," without providing any of the reasoning behind that assertion. Def.'s Mot. Recons., Ex. 15 (Second Revised <u>Vaughn</u> Index) at 28. While the information concerning many of the documents is expanded in the Second Revised <u>Vaughn</u> Index than the Revised <u>Vaughn</u> Index, it does not provide much insight into the predecisional deliberations asserted. For instance, the new document description for Document 56 merely adds that the e-mail chain is about "predecisional deliberations on procedures for drafting a memorandum proposing discipline." <u>Id.</u> at 27. However, this type of description appears to do nothing more than "explain an existing policy," which "cannot be considered deliberative," <u>Pub. Citizen II</u>, 598 F.3d at 876, and most certainly does not identify the particular document as "candid or personal in nature," Sept. 22 Mem. Op. at 23.

The newly submitted declarations also do not aid in determining whether protection is warranted under the deliberative process privilege because they speak only generally about the documents and the asserted deliberative process involved, rather than addressing the documents individually and explaining how they furthered deliberation on a particular legal or policy matter by making a recommendation or expressing an opinion. <u>See</u> Def.'s Mot. Recons., Ex. 19 (Second Supplemental Declaration of Nancy Ellen Tyler ("2d Suppl. Tyler Decl.")) ¶ 5. The declaration of Nancy Ellen Tyler states that when deciding whether to take disciplinary action "SEC management, OHR staff, and SEC attorneys consider a variety of issues including whether the conduct at issue warrants discipline, what discipline is appropriate . . . and how to implement the decisions." <u>Id.</u>, Ex. 19 (2d. Suppl. Tyler Decl.) ¶ 5. However, the declaration provides no specifics regarding the disciplinary discussions referenced in these documents, and without

something more, the Court cannot determine whether the defendant is correct to withhold these documents pursuant to the deliberative process privilege.

The Court now, however, finds that sufficient new details have been provided to exempt Documents 11, 42, 45, and 62 from disclosure by stating "specifically why the wholesale redaction of these records is warranted" and that the deliberative discussions referenced in these documents were "candid or personal in nature." Sept. 22 Mem. Op. at 23, 24. The Second Revised Vaughn Index now identifies Document 11 as an e-mail from "an HR staff person to an OGC attorney . . . transmitting for OGC review and legal advice a draft of a[n 87-page] memorandum," Def.'s Mot. Recons., Ex. 15 (Second Revised Vaughn Index) at 5, rather than simply stating that it is part of an internal e-mail chain and claiming it contains pre-decisional deliberations, Def.'s Mem., Ex. 9 (Revised Vaughn Index) at 2. The description of Document 62 similarly provides enhanced detail on the nature of the e-mail and references a 45-page draft memorandum, attached to the e-mail, "proposing employee discipline." Id., Ex. 15 (Second Revised Vaughn Index) at 30. The entry for Document 42 describes an e-mail chain that contains an original e-mail from an HR supervisor "seeking advice on how to handle attorney misconduct," along with requests for review by attorneys and what discipline may be appropriate. Id., Ex. 15 (Second Revised Vaughn Index) at 19. The Second Revised Vaughn Index specifically describes for the Court the SEC employees involved in the deliberative process reflected in the e-mail chain and the nature of their discussions, rather than simply stating that the parties are "sending and commenting" on a report without specifying why those comments cannot be redacted. See id., Ex. 15 (Second Revised Vaughn Index) at 1 (describing Document 1). Document 45 also provides the level of specificity indicative of predecisional deliberations, describing the document as a "[d]raft of memorandum to [an] SEC employee from

SEC supervisor . . . [,] recommending discipline of [the] employee . . . . [and i]nclud[ing] handwritten comments by [a] HR staff person." Id., Ex. 15 (Second Revised Vaughn Index) at 21. Thus, Documents 11, 42, 45, and 62 are the only documents for which the SEC has met its burden for withholding the documents under Exemption 5 based on the deliberative process privilege.

b. Attorney Work Product

"The work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . .'" Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(3)). Records prepared by attorneys "in the ordinary course of business or for other nonlitigation purposes" are not protected by Exemption 5. In re Sealed Case, 146 F.3d 881, 887 (D.C. Cir. 1998). The Court previously found that the SEC had not provided sufficient detail to establish "that all of the communications were created with litigation in mind." Sept. 22 Mem. Op. at 30. The Court therefore held that the SEC needed to "submit additional evidence that establishes that all of the communications were created with litigation in mind." Id. And to meet its burden for withholding information under Exemption 5, the SEC needed to show that the lawyers "had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." In re Sealed Case, 146 F.3d at 884.

The defendant contends that the declaration of David Pinansky now addresses all of the documents withheld as work product documents other than Documents 49-51, 65, and 72, while the Second Revised Vaughn Index "explains the role of an attorney in the creation of each document withheld as work [] product." Def.'s Mot. Recons. at 4-5; id., Ex. 20 (2d. Suppl. Pinansky Decl.). The defendant also presents the declaration of Leslie Wharton, which it asserts

shows that the "[t]he text of [these] documents . . . contain the discussions among SEC attorneys about the handling of ongoing litigation in [SEC] enforcement actions."  Def.'s Mot. Recons. at 4-5; id., Ex. 21 (Declaration of Leslie Wharton ("Wharton Decl.")) ¶ 3.

The plaintiff maintains that the Pinansky declaration shows that the documents discuss a disciplinary matter that could result in administrative or "possible future litigation" and that this does not qualify the documents as having been prepared for the "prospect of litigation."  Pl.'s Opp'n Mot. Recons. at 7 (emphasis omitted).  The plaintiff takes issue with Pinansky's statement that he "'specifically considered' unidentified issues that were 'relevant to possible future litigation,'" id. (quoting Def.'s Mot. Recons., Ex. 20 (2d. Suppl. Pinansky Decl.)), arguing instead that "the record as a whole suggests that the contested documents were simply compiled in the ordinary course of business of disciplining an employee."  Pl.'s Opp'n Mot. Recons. at 7 (citing In re Sealed Case, 146 F.3d at 884, 887).  Additionally, the plaintiff asserts that Tyler's declaration shows that "attorneys are consulted and memoranda drafted even when litigation is not anticipated," which further suggests that these "are the type [of documents] prepared in the ordinary course of disciplining employees."  Pl.'s Opp'n Mot. Recons. at 7.

The Court now agrees with the defendant that Documents 11, 13, 25-29, 31-37, 39, 41-44, 53-55, 57, and 59-63 may be withheld pursuant to the attorney work-product prong of Exemption 5.  The initial declaration of David Pinansky stated only "that litigation was possible and that [the SEC] needed to prepare for that situation."  Def.'s Mem., Ex. 4 (Pinansky Decl.) ¶ 10.  The second supplemental declaration of David Pinansky, addressing all documents withheld under the work-product privilege other than Documents 49-51, 65, and 7, states that the matter in question "could result in discipline . . . [and] OGC attorneys are regularly asked to provide legal advice to HR staff on such matters because they are the ones that are most likely to result in

litigation." Def.'s Mot. Recons., Ex. 20 (2d. Suppl. Pinansky Decl.) ¶ 4. This matter was one he "believed could result in either administrative or court litigation because the staff was considering discipline that would have a significant impact on the employee, and the employee did not agree with management's view of the events at issue." Id., Ex. 20 (2d. Suppl. Pinansky Decl.) ¶ 4. Moreover, the declaration makes clear that "[i]n fact, the matter did evolve into litigation." Id., Ex. 20 (2d. Suppl. Pinansky Decl.) ¶ 4. Thus, while the Court previously recognized that the defendant is not "compel[led] . . . to demonstrate that litigation actually resulted from this personnel dispute," Sept. 22 Mem. Op. at 31, the fact that the dispute did culminate in litigation vindicates Mr. Pinansky's "'subjective belief that litigation was a real possibility,'" and shows that "'that belief [was] objectively reasonable,'" id. (quoting In re Sealed Case, 146 F.3d at 884). The Court's previously expressed concern regarding the application of Exemption 5 and the objective reasonableness of the defendant's belief that litigation was a real possibility, see Sept. 22 Mem. Op. at 31 ("There are any number of tasks that an attorney could undertake on behalf of or communications that an attorney could have with the human-resources component of an agency – likely even in the [context] of an employee's termination – that never trigger the attorney work-product protection because litigation was not objectively reasonable."), is now allayed as it is clear that such concerns were indeed reasonable. The defendant is therefore justified in withholding Documents 11, 13, 25-29, 31-37, 39, 41-44, 53-55, 57, and 59-63 pursuant to Exemption 5 of the FOIA, as they are protected by the attorney work-product privilege.

Unlike the Second Supplemental Pinansky Declaration, however, the Wharton declaration adds nothing to the work-product privilege analysis, as it only states that "[i]t is clear from the text of [Documents 49-51, 65, and 72] that they contain discussions among SEC

attorneys about the handling of ongoing litigation in Commission enforcement actions." Def.'s Mot. for Recons., Ex. 21 (Wharton Decl.) ¶ 3. Likewise, the descriptions of these documents in the Second Revised <u>Vaughn</u> Index remain conclusory. <u>See, e.g.</u>, <u>id.</u>, Ex. 15 (Second Revised Vaughn Index) at 31 ("This is protected work product from an enforcement action. . . ."). Thus, the Wharton Declaration does not provide any more detail supporting the applicability of the work-product privilege to Documents 49-51, 65, and 72 than originally provided when the Court rendered its prior decision on September 22, 2010.

c. Attorney-Client Privilege

"To invoke the [attorney-client] privilege, an agency must demonstrate that the documents it seeks to withhold (1) involve 'confidential communications between an attorney and his client' and (2) relate to 'a legal matter for which the client has sought professional advice.'" <u>Judicial Watch, Inc. v. U.S. Postal Serv.</u>, 297 F. Supp. 2d 252, 267 (D.D.C. 2004) (quoting <u>Mead Data Cent., Inc. v. Dep't of the Air Force</u>, 566 F.2d 242, 252 (D.C. Cir. 1977)). Here, the SEC's initial filings and supporting declarations offered only "conclusory assertions and blanket affirmations." Sept. 22 Mem. Op. at 27. Furthermore, the Court previously held that the SEC failed to address whether the communications were "circulated no further than among those members of the organization who [were] authorized to speak or act for the organization in relation to the subject matter of the communication." <u>Id.</u> (citing <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 863). Essentially, the Court required "more proof that the privilege applies if [the SEC] desires to shield these records . . . based on an assertion of the attorney-client privilege." Sept. 22 Mem. Op. at 28.

The SEC continues to withhold Documents 11, 13, 25, 26, 35, 37, 39, 41-44, 53, 55, 57, 59, and 63 pursuant to the attorney client privilege. Def.'s Mot. Recons. at 5. It now relies on

the Second Supplemental Declarations of David Pinansky and Nancy Ellen Tyler as proof that the communications contained in these documents were confidential, and that the SEC was "reasonably careful to keep this information confidential and protected [from] disclosure, and the . . . documents are [therefore] protected by the attorney-client privilege." Id. at 6.

The plaintiff maintains that the new declarations are "no different" in that they continue to provide "nothing more than conclusory assertions and blanket affirmations." Pl.'s Opp'n Mot. Recons. at 8. Specifically, the plaintiff takes issue with the fact that "[n]o detail is given on particular documents, nor is an attempt made to show that all communications 'reflected in or related to' the documents were confidential." Id.

The declarations submitted by the defendant answer whether the communications were "circulated no further than among those members of the organization who [were] authorized to speak or act for the organization in relation to the subject matter of the communication." Sept. 22 Mem. Op. at 27 (internal quotation marks omitted). The Second Supplemental Declarations of Tyler and Pinansky clearly state that all participants were expected to keep information confidential, that they preserved the confidentiality of the documents, and that the SEC also has a policy of keeping confidential all communications involving employee discipline. Def.'s Mot. Recons., Ex. 19 (2d. Suppl. Tyler Decl.) ¶ 4; id., Ex. 20 (Second Supplemental Declaration of David M. Pinansky ("2d. Suppl. Pinansky Decl.")) ¶ 5. Pinansky states that "no one else disclosed the[] communications outside of th[e] group" and information about staff discipline is only provided "to staff responsible for imposing the discipline, namely managers of the employee, those providing advice or assistance regarding the discipline, or [the] supervisors of those persons." Id., Ex. 20 (2d. Suppl. Pinansky Decl) ¶ 5. These declarations "'demonstrate that confidentiality was expected in the handling of these communications, and that [the SEC] was

reasonably careful to keep this confidential information protected from general disclosure.'" Sept. 22 Mem. Op. at 27 (quoting Coastal States, 617 F.3d at 863). The SEC has therefore met its burden to justify withholding the documents it has identified based on the Attorney-Client privilege.[11]

2. Exemption 6[12]

The SEC continues to rely on Exemption 6 to withhold, in whole or in part, all of the documents listed in the Second Revised Vaughn Index. Def.'s Mot. Recons. at 7. Exemption 6 of the FOIA permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); see Dep't of State v. Wash. Post Co., 456 U.S. 595, 598 (U.S. 1982) ("Exemption 6 permits the withholding of information only when two requirements have been [satisfied]: first, the information must be contained in personnel, medical, or 'similar' files, and second, the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy."). To determine whether documents can be withheld pursuant to Exemption 6 the Court must "balance the 'individual's right of privacy' against the

---

[11]    The defendant's motion for reconsideration, the plaintiff's opposition to the motion, and the defendant's reply in support of the motion all focus only on the confidentiality of the communications at issue, see Def.'s Mot. at Recons. at 5-6; Pl.'s Opp'n Mot. Recons. at 8; Def.'s Reply at 3, presumably because the question of whether the communications had indeed been kept confidential anchored the Court's prior analysis of whether the defendant could rightfully assert the attorney-client privilege to withhold these documents. As noted in both the September 22, 2010 Memorandum Opinion and earlier in this Memorandum Opinion, however, there are two elements that must be satisfied for the attorney-client privilege to apply. See supra at 18. While a lengthier analysis of the second prong of this privilege would perhaps be necessary for the Court to conclusively determine that the defendant has properly invoked the attorney-client privilege component of Exemption 5 to withhold the documents at issue, this analysis is now unnecessary in light of the Court's conclusion that the attorney work-product privilege protects from disclosure these same documents. See supra at 17; Coleman v. Lappin, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) (observing that "[i]f the Court determines that information properly is withheld under one exemption, it need not determine whether another exemption applies to that same information") (citing Simon v. Dep't of Justice, 980 F.2d 782, 785 (D.C. Cir. 1992)).

[12]    In light of the prior opinion issued by the Court in this case and the extent to which that decision discussed Exemption 6, the Court will not repeat again here an extensive discussion of the legal standards applicable to Exemption 6. See Sept. 22 Mem. Op. at 31-37.

basic policy of opening 'agency action to the light of public scrutiny.'" Dep't of State v. Ray, 502 U.S. 164, 175 (1991) (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976)).

The Court previously concluded that "the public has some interest in knowing whether the defendant will take action if one if its employees . . . utilize[s] his position to purportedly further private interests or harass private citizens." Sept. 22 Mem. Op. at 35. As the Court recognized, Documents 1-77 are personnel-related and their content does implicate substantial privacy concerns as to the subject of the investigation. Id. at 36. However, the Court was unable to conduct the required balancing analysis with only the vague assertions provided by the defendant and its mere speculation that disclosure could amount to an invasion of privacy. Id.

In its Motion for Reconsideration, the defendant argues that there is not a sufficient public interest in disclosure because "the employee about whom [the plaintiff seeks] information had no connection to the investigation of or litigation against [the plaintiff]." Def.'s Mot. Recons. at 8. The defendant also contends that "most of the documents withheld under Exemption 6 do not pertain to a decision whether to take disciplinary action as a result of the Cuban e[-]mails" and "[o]nly [D]ocuments 1-6 and 47 pertain to the decision regarding discipline for the Cuban e[-]mails." Id. Therefore, the defendant concludes that the only documents with identifiable public interests are Documents 1-6 and 47. Id. And, regarding Documents 1-6 and 47, the defendant argues that the public has no interest in the name of the disciplined individual and that redaction would not suffice to protect the individual's identity from an unwarranted invasion of his or her privacy interests. Id. at 8-9.

The plaintiff in turn renews his previous argument that the details of the "disciplining of a public servant who sent vitriolic e[-]mails to a private citizen from a government e[-]mail address during work hours, regardless of whether he also participated in the investigation of the

citizen" sheds light on government action and there is a public interest in such information.  Pl.'s

Opp'n Mot. Recons. at 4.  The plaintiff reiterates that the SEC needs only to redact the personal

information rather than withhold the sixty-seven documents in their entirety, especially when it

has not provided "the Court [any] basis to assess the SEC's position" that disclosure of the

documents would constitute a clearly unwarranted invasion of privacy.  Id. at 5.

The only new or additional information offered to support the defendant's motion for

reconsideration is found in the declaration of Robert B. Kaplan, wherein the declarant states that

the employee in question "did not participate in the Commission's investigation and had no role

in the review, recommendation, or litigation of this case . . . [, nor any] direct or indirect

supervisory relationship or role with anyone working on the investigation."  Def.'s Mot. Recons.,

Ex. 12 (Declaration of Robert B. Kaplan) ¶ 3.  The Kaplan Declaration notwithstanding, the

Court again finds the Second Revised Vaughn Index severely lacking in the detail needed to

undertake the required balancing.  While the Revised Vaughn Index previously stated that

documents withheld under Exemption 6 were "withheld in [their] entirety to protect personal

privacy interests in personnel matters," the Second Revised Vaughn Index adds only that the

documents were

> withheld in [their] entirety to protect personal privacy interests of an employee
> subject to potential discipline and of SEC staff involved in deciding on the
> discipline.  Redacting identifying information alone is not sufficient because
> information already available to [the] plaintiff and/or [the] public would allow
> [the] plaintiff and others to identify the employee subject to discipline.

See Def.'s Mem., Ex. 9 (Revised Vaughn Index) at 1 (description of Document 1); Def.'s Mot.

Recons., Ex. 15 (Second Revised Vaughn Index) at 1 (description of Document 1).  This

language is applied throughout the Second Revised Vaughn Index to justify the withholding of

all documents withheld under Exemption 6.  And again, such language is nothing more than a

"conclusory statement" devoid of any specific reasons why the names in the documents and other identifying information cannot be redacted to adequately protect the privacy interest about which the defendant is concerned. Moreover, this new information fails to address the Court's finding that the "public interest favors disclosure of some parts of the records" or an answer as to why partial redaction is inadequate. Sept. 22 Mem. Op. at 35-36. Therefore, the Court must find that the defendant has not presented sufficient new facts to warrant reconsideration of the Court's prior decision that the defendant has not satisfied its burden for withholding the subject documents in their entirety under Exemption 6.

3. Exemption 7(C)[13]

Exemption 7(C) is designed to protect the personal privacy interests of individuals named or identified in "records or information compiled for law enforcement purposes," to the extent that the disclosure of those records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether an agency's withholding is proper under this exemption, an individual's right to privacy must be weighed against the public's right to disclosure. Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1115 (D.C. Cir. 2007) (citing Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). The Court previously found that the defendant had not justified its withholding of the documents it asserts are subject to this exemption and that "[n]othing in the defendant's proffer assist[ed] the Court in assessing why redacting the names and other identifying characteristics of the persons involved in the OIG investigations [would] not adequately protect the privacy interests at stake, a

---

[13] Again, in light of the Court's prior decision in this case and the extent to which that decision discussed Exemption 7, the Court will not here repeat the exhaustive discussion of the legal standards applicable to Exemption 7. See Sept. 22 Mem. Op. at 40-44.

finding that the Court must be able to make to sanction a complete withholding." Sept. 22 Mem. Op. at 44.

The defendant continues to withhold Documents 9 and 16-18 in their entirety and 78-80 in part pursuant to Exemption 7(C). Def.'s Mot. Recons. at 9. The defendant contends that "[D]ocuments 9 and 16-18 . . . were gathered for a law enforcement matter conducted by the SEC's [OIG] where an employee was a subject of the investigation." Id. at 10. The defendant believes "[i]t is clear from the face of the documents that they are from an OIG investigation" and therefore, "disclosing them would invade the employee's privacy by indicating what the OIG was investigating." Id.

The plaintiff contends that his arguments concerning Exemption 6 also support his argument regarding Exemption 7(C). Pl's Opp'n Mot. Recons. at 1 n.1 ("[W]ith respect to [Exemption] 7(C), [the plaintiff] will rely on the arguments in this Opposition regarding Exemption 6 . . . and on [his] previous briefs."). Thus, the plaintiff posits that the defendant has not established that disclosure of the contested documents would constitute an unwarranted invasion of personal privacy.

The defendant has previously produced to the plaintiff Documents 78-80 in redacted form, with the only redacted information being "names and personally identifiable information." October 20, 2010 Status Report ¶ 17. The defendant now asserts, somewhat cryptically, that "there is no issue as to the propriety of withholding [the] personal identifying information" in Documents 78-80, Def.'s Mot. Recons. at 10, and the plaintiff's opposition does not address this representation or these documents. Considering the defendant's contention and the plaintiff's silence regarding Documents 78-80, the Court assumes that the plaintiff is not challenging the redaction of Documents 78-80.

As to Documents 9 and 16-18, however, the Court again finds the defendant's Second Revised <u>Vaughn</u> Index inadequate. For example, the description of Document 9 in the Second Revised <u>Vaughn</u> Index only adds the dates of the e-mail chain and that this document "contains the names of the SEC employees at issue and the SEC supervisors and HR employees deciding [a] discip[linary matter]." Def.'s Mot. Recons., Ex. 15 (Second Revised <u>Vaughn</u> Index) at 4. With regard to the basis for invoking Exemption 7(C), the Second Revised <u>Vaughn</u> Index states that "[t]his e[-]mail was withheld in its entirety [because] . . . [r]edacting identifying information alone is not sufficient because information already available to [the] plaintiff and/or the public would allow [the] plaintiff and others to identify the employee subject to discipline." <u>Id.</u> The earlier Revised <u>Vaughn</u> Index stated that the document was "[w]ithheld in its entirety to protect personal privacy interests in personnel matters." Def.'s Mem., Ex. 9 (Revised <u>Vaughn</u> Index) at 2. The information regarding Documents 16-18 in the most recent <u>Vaughn</u> index is nearly identical in describing the basis for the withholding under Exemption 7(C). The Court previously stated that the "identities of the subject of the investigation and those involved in the investigative process [are] not nearly as significant as the actions (or lack thereof) taken by the defendant." Sept. 22 Mem. Op. at 43. However, the Court emphasized it needed to know "why redacting the names and any other identifying characteristics of the persons . . . [would] not adequately protect the privacy interests at stake." <u>Id.</u> at 44.

The Court again must find that it cannot with confidence conclude that redaction is insufficient when the only reason supplied by the defendant is that information already available to the plaintiff or the general public would allow identification of the employee in question. The Court previously emphasized the public interest that exists in the disclosure of these documents due to the "extensive media attention" the plaintiff's SEC matters have received, and the Court

still needs more detail than what has been provided.  Although <u>in camera</u> review is certainly not the Court's preferred manner of handling FOIA cases, the Court would remind the defendant that such review is available if, as the defendant contends, it cannot provide any further explanation without disclosing protected information.  <u>See</u> Def.'s Reply at 5.

4.  <u>Exemption 3(A)</u>

In its motion for reconsideration the defendant now, for the first time, raises Exemption 3(A) of the FOIA, in conjunction with 31 U.S.C. § 5319, as a basis for withholding Documents 50 and 51, which contain suspicious activity reports.  Def.'s Mot. Recons. at 6.

The District of Columbia Circuit has held that a party's reliance on a FOIA exemption is waived and cannot be asserted on appeal when the party fails to raise the exemption in the district court, thus denying the district court the opportunity to address the applicability of the exemption in the first instance.  <u>Maydak v. Dep't of Justice</u>, 218 F.3d 760, 767-79 (D.C. Cir. 2000).  Another member of this Court has refused to permit the government to raise a new exemption, the presidential communications privilege, on a Motion for Reconsideration under Rule 60(b) after summary judgment had been granted.  <u>Judicial Watch, Inc. v. Dep't of Energy</u>, 319 F. Supp. 2d 32, 35 (D.D.C 2004) (Friedman, J.).  In that case, the government "fail[ed] to raise the presidential communications privilege prior to the Court's ruling on all of the parties' motions for summary judgment" and "offer[ed] no explanation for its failure to raise [the exemption]."  <u>Id.</u> at 34.  On the other hand, in <u>Williams v. FBI</u>, No. 91-cv-1054, 1997 WL 198109 (D.D.C. Apr. 16, 1997), another member of this Court allowed the redaction of documents in conjunction with a motion for reconsideration based on FOIA Exemption 7(E) even though the government had failed to raise the exemption during the summary judgment process.  <u>Id.</u>  In <u>Williams</u>, the Federal Bureau of Investigation ("FBI") filed both a notice of

appeal and a motion for reconsideration after receiving what it viewed as an unfavorable ruling from the district court. Id. at *1. The court of appeals held its proceedings in abeyance pending the outcome of the motion for reconsideration, but the plaintiff nonetheless argued to the district court that the FBI should be estopped from invoking the exemption because the notice of appeal had been filed. Id. at *1-2. In resolving that argument, the district court examined Washington Post Co. v. U.S. Dep't of Health & Human Services, 795 F.2d 205, 208 (D.C. Cir. 1986), in which the Circuit "held that an agency may not raise additional [FOIA] exemptions on remand [to the district court] after appeal." Williams, 1997 WL 198109 at *2. But the Williams court then questioned whether "the rule in [Washington Post] [wa]s applicable [t]here, where the additional exemption was raised on a motion for reconsideration." Id. The court concluded that "the policy militating against piecemeal legislation [wa]s less weighty where the district court proceedings [were] not yet complete." Id. The court also pointed out that even if the government were estopped from raising an exemption in conjunction with a motion for reconsideration, "there is no rule that prohibits the district court, sua sponte[,] from applying the law in order to achieve a just result." Id.

Exemption 3(A) protects from disclosure documents "specifically exempted from disclosure by statute (other than section 552b of this title), if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). "[Congress] provided that only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption." Irons & Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979).

The Bank Secrecy Act, the law on which the defendant now bases its Exemption

3 withholding, permits the Secretary of the Treasury to require financial institutions to

report suspicious transactions: "[t]he Secretary may require any financial institution, and

any director, officer, employee, or agent of any financial institution, to report any

suspicious transaction relevant to a possible violation of law or regulation."[14]  31 U.S.C.

§ 5318(g)(1) (2006).  Another provision of the Bank Secrecy Act, reads:

> The Secretary of the Treasury shall make information in a report filed under this subchapter available to an agency, including any State financial institutions supervisory agency, United States intelligence agency or self-regulatory organization registered with the Securities and Exchange Commission or the Commodity Futures Trading Commission, upon request of the head of the agency or organization. The report shall be available for a purpose that is consistent with this subchapter. The Secretary may only require reports on the use of such information by any State financial institutions supervisory agency for other than supervisory purposes or by United States intelligence agencies. However, a report and records of reports are exempt from disclosure under section 552 of title 5.

31 U.S.C. § 5319.  This provision of the Bank Secrecy Act explicitly exempts suspicious activity

reports from disclosure under the FOIA.  See Sciba v. Bd. of Governors of the Fed. Reserve Sys.,

No. 04-cv-1011, 2005 WL 3201206, at *6 (D.D.C. Nov. 4, 2005) (Walton, J.) (treating 31 U.S.C.

§5319 as providing absolute protection from disclosure).

As noted above, the defendant now raises Exemption 3(A) of the FOIA, in conjunction

with 31 U.S.C. § 5319, as a basis for withholding Documents 50 and 51, which contain

suspicious activity reports.  The proceedings in this case are not yet complete as evidenced, for

---

[14]  The stated purpose for enacting the Bank Secrecy Act was to "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism," 31 U.S.C. 5311, and to achieve this objective it also requires financial institutions to file other types of reports, in addition to suspicious activity reports. See 31 U.S.C. § 5314 (Records and Reports on Foreign Financial Agency Transactions); 31 U.S.C. § 5315 (Reports on Foreign Currency Transactions); 31 U.S.C. § 5316 (Reports on Exporting and Importing Monetary Instruments).

example, by the Court's consideration of the defendant's Rule 54 motion.  The Court also notes

that the plaintiff, in his opposition, had an opportunity to respond to the defendant's recent

invocation of Exemption 3.  In other words, the exemption was not only raised before this Court

prior to the commencement of any appellate proceedings, but was also argued and addressed by

both parties in this Court.  Pl.'s Opp'n Mot. Recons. at 9-10.  Moreover, the Court cannot

overlook the importance of protecting information in the suspicious activity reports, especially

when it is explicit in the statute that the information should not be disclosed.  See Sciba, 2005

WL 3201206, at *5 ("Exemption 3(A) is, as Congress intended it to be, an exception to the

policy of broad disclosure."); Linn v. U.S. Dep't of Justice, No. 92-cv-1406, 1995 WL 631847, at

*30 (D.D.C. Aug. 22, 1995) ("The absolute language of section 5319 eliminates any possibility

of agency discretion . . . . [T]he provision satisfies the requirement of Exemption 3 that a

statutorily mandated privilege must either leave no discretion to the agency or establish

particular criteria for withholding.")  In accordance with the requirements of Exemption 3(A),

section 5319 is a separate statute from the FOIA that explicitly prohibits disclosure under the

FOIA.  See Sciba, 2005 WL 3201206, at *6 (holding Exemption 3(A) justifies nondisclosure of

suspicious activity reports).  Thus, the Court finds that the defendant has not waived raising

Exemption 3(A), and further finds that the exemption prohibits disclosure of Documents 50 and

51, as they were created by a financial institution and contain either a report or a record of

reports.

### III.  CONCLUSION

For the foregoing reasons, the Court finds the defendant's Motion for Reconsideration

must be granted in part and denied in part.[15]  Specifically, the Court finds that the defendant's

---

[15]     The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

search for records responsive to Category 7 was adequate; however, because the defendant has provided no new information that materially supplements what was provided earlier regarding Categories 11, 12, and 13 of Request Letter I, evidence of the sufficiency of these searches remains inadequate. Further searches for these three categories of documents must therefore be conducted by the defendant. The Court also concludes that the defendant has now satisfied its burden of establishing that Documents 11, 13, 25-29, 31-37, 39, 41-45, 50, 51, 53-55, 57, and 59-63 are exempt from disclosure in whole, and, furthermore, that the defendant need not disclose any of the material that has been redacted from Documents 78-80. Finally, the Court finds that the defendant has still not provided adequate justification for not disclosing Documents 1-3, 5-9, 12, 14-19, 22, 30, 38, 40, 46-49, 52, 56, 64, 65, and 67-77. Accordingly, in responding to this opinion and clarifying its reliance on any of the FOIA's exemptions, the defendant must provide additional explanations with sufficient details so as to enable the Court to assess whether the exemptions are being properly asserted. Otherwise, these documents must be provided to the plaintiff.

REGGIE B. WALTON
United States District Judge